In the Matter of the Commitment of
Martin GOLUB, Appellant–
Respondent,

v.

Dr. David GILES, M.D. and Gallahue
Mental Health Services, Appellees–
Petitioners.

No. 49A02–0405–CV–386.

Court of Appeals of Indiana.

Sept. 15, 2004.

Joel M. Schumm, Indianapolis, IN, Attorney for Appellant.

Jeremy A. Klotz, Richard A. Smikle, Ice Miller, Indianapolis, IN, Attorneys for Appellees.

## OPINION

BAKER, Judge.

Appellant–Respondent Martin Golub appeals an order involuntarily committing him to a mental health facility as an inpatient. Specifically, Golub argues that (1) appellees-petitioners Dr. David Giles, M.D. and Gallahue Mental Health Services (collectively, "Dr.Giles") did not present sufficient evidence of a grave disability as defined by Indiana Code section 12–7–2–96 to satisfy the commitment requirements; and (2) the special conditions of the commitment prohibiting Golub from consuming alcohol and drugs and harassing or assaulting his family members were improperly imposed because they were not requested by Dr. Giles, and they bore no relationship to the reasons for Golub's commitment.

 Finding that there was sufficient evidence of a grave disability, we affirm the order of commitment. We also find, however, that all of the special conditions were improperly imposed as they relate to Golub's in-patient care and that the special conditions prohibiting Golub from consuming drugs and alcohol was also improperly imposed as it relates to Golub's out-patient care. We therefore reverse that portion of the order and remand this cause to the trial court with instructions that it strike all special conditions from the order of commitment insofar as they apply to Golub's in-patient care and to strike the special condition preventing Golub from consuming drugs and alcohol from the order of commitment altogether.[1]

## FACTS

The facts most favorable to the judgment are that Golub is a thirty-eight-year-

---

1. It is entirely possible that Golub has now been discharged from the hospital, in which case this matter would be moot. While generally, we dismiss cases that are deemed to be moot, a moot case may be decided on its merits when it involves questions of great public interest that are likely to recur. *See, e.g., In re Commitment of J.B.*, 766 N.E.2d 795, 798 (Ind.Ct.App.2002). The question of how persons subject to involuntary commitment are treated by our trial courts is one of great importance to society. *Id.* Moreover, this case involves the proof necessary for involuntary commitment, whether a trial court may impose conditions on a patient as part of a regular in-patient commitment, and the standard applied to special conditions of an out-patient commitment. These are issues of great public importance and are likely to recur, so we will address them here. *See id.*

old male with a well-documented history of mental illness and emergency detentions. Between 1998 and August 2003, Golub was detained on an emergency basis at least three times, based on a variety of behavior, including: making threats to his sister-in-law, discussing suicide, getting banned from his place of employment, exhibiting highly delusional and paranoid behavior, threatening to cut his wrists, and exhibiting unpredictability that evinced a potential to strike out physically in frustration and anger.

In August 2003, during an emergency detention, Dr. Giles, a physician with privileges at Community Hospital North, diagnosed Golub with Bipolar Disorder with Psychotic Symptoms. Dr. Giles based this diagnosis on interviews with Golub and Golub's family and consideration of two prior admissions. Dr. Giles referred Golub to an out-patient facility after Golub was discharged for follow-up medication and treatment, but there is no evidence that Golub sought out the facility or follow-up services. In the past, Golub took Lithium for help with his mental illness, but due to poor kidney function, Lithium is currently contraindicated. Golub refuses, however, to take any medication other than Lithium, apparently because of various side effects that he experienced when taking alternative medications.

Directly at issue in this case is Golub's behavior in the days leading up to April 12, 2004. On that day, Indianapolis police officers detained Golub and then transported him to Community Hospital North. At that time, after examination of Golub, Dr. Giles reaffirmed his prior diagnosis that Golub was suffering from Bipolar Disorder with Psychotic Symptoms.

In the months and days leading up to April 12, 2004, Golub took a variety of actions leading Dr. Giles to reaffirm that diagnosis. Among other things, Golub: (1) lunged at a hotel manager, (2) threatened his brother, sister-in-law, and other family members, and (3) claimed that actor Leonardo DiCaprio [2] assaulted him.

In addition, Golub's brother Marshall Golub ("Marshall") witnessed Golub attempting to direct traffic on Shadeland Avenue, and upon inquiry Golub stated: "I'm talking to the birds. I'm talking to the people up there. Just leave me alone." Tr. p. 20. Moreover, Marshall observed physical damage that had been done to the two hotel rooms in which Golub had been living prior to April 12, 2004: the television was destroyed and taped up, the pictures had been taken off the wall and some had been broken, the electrical outlets had been taped up, the air conditioner had been broken, the fire alarm had been removed, and the towel rack was broken. Finally, in the weeks leading up to April 12, 2004, Golub left a voicemail message for Marshall's wife, Lisa Golub ("Lisa"), accusing her of being part of the Federal Bureau of Investigation, accusing her of stalking and watching him, and informing her that he was sitting across the street from her house in a school watching her turn lights on and off. Lisa testified that this message frightened her because she has two small children and feared for their safety.

On April 13, 2004, Dr. Giles filed an Application for Emergency Detention of Mentally Ill and Dangerous Person. Following a commitment hearing on April 19, 2004, the trial court issued an order of regular commitment [3] committing Golub to

---

**2.** DiCaprio has starred in such well-known films as *Titanic, What's Eating Gilbert Grape?, Gangs of New York,* and will star as Howard Hughes in the upcoming *The Aviator.*

**3.** An order of regular commitment is appropriate when the commitment is likely to exceed ninety days. Ind.Code § 12–26–7–1.

Community Hospital North/Gallahue Mental Health Services as an in-patient. The order of commitment, inter alia, provided that Golub would be committed as an in-patient, but that if it was the opinion of the staff that Golub no longer needed in-patient care, he "may be transferred to out-patient status for the balance of the commitment period, or from time to time as necessary." Appellant's App. p. 6. It also imposed six special conditions, requiring Golub to:

1. Take all medications as prescribed.
2. Attend all clinic sessions as scheduled.
3. Maintain his address and his telephone number on record if and when [Golub] is placed on out-patient commitment.
4. Not harass or assault family members or others.
5. Not use alcohol, or drugs, other than those prescribed by a certified medical doctor.

*Id.* p. 7. Golub now appeals.

### DISCUSSION AND DECISION

#### I. Standard of Review

When reviewing a challenge to sufficiency of the evidence with respect to commitment proceedings, we look to the evidence most favorable to the trial court's decision and draw all reasonable inferences from that decision. *In re the Commitment of G.M.*, 743 N.E.2d 1148, 1150–51 (Ind.Ct.App.2001). Moreover, if the trial court's commitment order represents a conclusion that a reasonable person could have drawn, we will affirm the order even if other reasonable conclusions are possible. *Id.*

When we review the evidence supporting such a judgment, we may neither reweigh the evidence nor judge the credibility of the witnesses. *In re Mental Commitment of W.W.*, 592 N.E.2d 1264, 1266 (Ind.Ct.App.1992). Where the evidence is in conflict, we are bound to view only that evidence that is most favorable to the trial court's judgment. *Id.*

In commitment proceedings, the burden falls on petitioner to prove by clear and convincing evidence that: "(1) the individual is mentally ill and either dangerous or gravely disabled; and (2) detention or commitment of that individual is appropriate." Ind.Code § 12–26–2–5(e).

#### II. Golub's Claims

##### A. Sufficiency of the Evidence

We first confront whether the evidence was sufficient to support the trial court's finding that Golub should be involuntarily committed. Golub argues that the court erred by including the word "Psychotic" in the commitment order. Appellant's Br. p. 5–8. He further argues that because he is fully able to feed and clothe himself and otherwise function independently in society, there was not clear and convincing evidence of a grave disability within the meaning of the relevant statute.

As noted, the petitioner must prove by clear and convincing evidence that: "(1) the individual is mentally ill and either dangerous or gravely disabled; and (2) detention or commitment of that individual is appropriate." I.C. § 12–26–2–5(e). Another statute, Indiana Code section 12–7–2–96, defines "gravely disabled" as:

a condition in which an individual, as a result of mental illness, is in danger of coming to harm because the individual:

(1) is unable to provide for that individual's food, clothing, shelter, or other essential human needs; or

(2) has a substantial impairment or an obvious deterioration of that individual's judgment, reasoning, or behav-

ior that results in the individual's inability to function independently.

In this case, according to Dr. Giles and the trial court, Golub is gravely disabled because he has a substantial impairment or an obvious deterioration of his judgment, reasoning, or behavior that results in his inability to function independently. Appellant's App. p. 6–7, 32–34. Dr. Giles based this conclusion on the fact that Golub does not accept that he is mentally ill and refuses to cooperate with treatment. Appellant's App. p. 33.

■ In challenging this conclusion, Golub first argues that the trial court erred by labeling his mental illness "Bipolar Disorder, Psychotic." Appellant's App. p. 6. At the hearing, Dr. Giles testified that his professional opinion was that Golub suffered from a "psychotic illness," basing that opinion on multiple interviews with Golub and Golub's family and a review of medical records from past admissions. Tr. p. 8. Moreover, Dr. Giles unequivocally stated that "the correct diagnosis is Bi-Polar [sic] Disorder with Psychotic Symptoms." *Id.* p. 9. Although Dr. Giles testified that he did not observe psychotic symptoms during Golub's April 2004 hospitalization, that lack of symptoms did not cause him to change his diagnosis. The trial court's conclusion that Golub suffers from "Bipolar Disorder, Psychotic," was therefore based on sufficient evidence from a medical expert familiar with Golub's case, and we deny his request to strike the word "Psychotic" from the commitment order.

■ Golub next argues that the trial court erred by concluding that Golub is "gravely disabled" as defined by Indiana

Code section 12–7–2–96. Contrary to Golub's argument, the trial court need not find that the person is incapable of providing himself with food or clothing, nor does it need to find that the person is dangerous, before it can conclude that the person is gravely disabled. Rather, the plain language of the statute only requires the trial court to find, as it did in this case, that the person has "a substantial impairment or an obvious deterioration of that individual's judgment, reasoning, or behavior that results in the individual's inability to function independently." I.C. § 12–7–2–96.

It was established at the hearing that Golub has a five-year history of mental illness requiring hospitalizations and causing paranoia, delusional thoughts, and threatening and destructive behavior. Tr. p. 5–12, 31–32. Dr. Giles testified that Golub would benefit from anti-psychotic drugs, but that he refused to cooperate with treatment. Tr. p. 10–12. That said, the trial court—as the factfinder—could reasonably conclude from this evidence that Golub is gravely disabled and should be involuntarily committed.[4]

■ As a final note on this issue, we reject Golub's contention that the trial court could only base its finding on evidence that was produced at a hearing. To be sure, the statute provides that the trial court may involuntarily commit an individual after "completion of the hearing" *and* "consideration of the record." Ind.Code § 12–26–7–5. Thus, the trial court could have properly considered any information contained in the record, including, presumably, all previous applications for and reports following Golub's emergency detentions—all of which were included in Golub's appendix. Even if, however, the

---

4. Although Golub cites to *Addington v. Texas,* 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979), for the proposition that a person may not be involuntarily committed for "idiosyn-

cratic behavior," 441 U.S. at 426–27, 99 S.Ct. 1804 the record before us shows that that Golub's behavior is far beyond the realm of "idiosyncratic."

trial court limited itself to evidence produced at the hearing, a reasonable person could have concluded that Golub should be involuntarily committed, based on our discussion above with regard to Golub's behavior that led up to the April 19, 2004 commitment hearing. Thus, the order of commitment stands.

*B. Special Conditions of Commitment*

Golub next contends that two of the five special conditions on the order of commitment should be stricken. Specifically, Golub argues that the conditions prohibiting him from (1) harassing or assaulting family members or others, and (2) using alcohol or drugs other than those prescribed by a certified medical doctor, are improper because Dr. Giles did not request them, they were not based on his assessment of Golub, and they bear no relationship to the reasons for his commitment.

As set forth above, the order of commitment contemplates Golub's initial commitment as an in-patient, but provides for a transfer to out-patient status if the staff of the facility believed that he no longer needed in-patient care. Appellant's App. p. 6. Furthermore, the order imposes five "special conditions" on Golub, but does not specify whether the conditions are to be imposed upon Golub as an in-patient or an out-patient. *Id.* p. 7. Consequently, the order requires that Golub follow the special conditions as an in-patient and as an out-patient, and we analyze the two types of patient care separately.

The relevant statutes enable a trial court to place conditions on an involuntary *out-patient* commitment, but not an involuntary *in-patient* commitment. *See* I.C. §§ 12–26–14–3, 12–26–7–5. While a trial court may order an individual entering an out-patient therapy program to "comply with other conditions determined by the court," I.C. § 12–26–14–3(4), there is no

such provision enabling a trial court to impose special conditions upon an individual being involuntarily committed as an in-patient. *See* I.C. § 12–26–7–5. While our research has revealed a handful of cases in which a trial court imposed conditions on out-patient commitment, we have found none in which a trial court imposed conditions on involuntary commitment as an in-patient. *See, e.g., In re Commitment of Tarpley,* 566 N.E.2d 71 (Ind.Ct.App.1991) (imposing conditions on out-patient commitment of taking all prescribed medications, attending all therapy sessions, and refraining from abusing drugs and alcohol), *rev'd on other grounds by In re Commitment of Tarpley,* 581 N.E.2d 1251 (Ind. 1992); *In re Commitment of Utley,* 565 N.E.2d 1152 (Ind.Ct.App.1991) (imposing conditions on out-patient commitment of taking all prescribed medications and attending all therapy sessions).

*1. In-patient Care*

■ The dearth of caselaw on and statutory authority for the imposition of special conditions on the involuntary commitment of an individual as an in-patient is not surprising. When an individual enters a mental health facility as an in-patient, he must follow the facility's rules, policies, and procedures. Thus, it is up to the facility, not the trial court, to impose conditions on the patient such as attending therapy sessions, taking prescribed medications, and abstaining from drug and alcohol use. If and when the trial court orders the individual to take part in out-patient therapy, then it may be appropriate for the court to place special conditions on the individual. *See* I.C. § 12–26–14–3(4).

In this case, the trial court entered an order of regular commitment of Golub, meaning that he was to be committed as an in-patient to a mental health facility for a period expected to exceed ninety days.

*See* Appellant's App. p. 6–7; I.C. § 12–26–7–1. Golub was bound to follow the rules, policies, and procedures of Community Hospital North/Gallahue Mental Health Services while he was an in-patient there, and the special conditions were therefore moot and improperly imposed insofar .as they applied to Golub while he was an in-patient at that facility.

### 2. Out-patient Care

As discussed above, it is appropriate for a trial court to place conditions on an individual who is involuntarily committed to out-patient care. I.C. § 12–26–14–3(4). But Golub argues that two of the special conditions in the order of commitment were improperly imposed.[5] To be sure, neither the trial court nor Dr. Giles mentioned or discussed either condition at the hearing, nor do they appear anywhere in the record other than in the trial court's final order of commitment.

We have found no reported case where an appellant has challenged the propriety of special conditions—other than forcible medication—imposed by a trial court where the individual is ordered to undergo out-patient treatment. By way of analogy, we note that in criminal cases where a trial court places special conditions on probation, those conditions must bear a " 'reasonable relationship to the treatment of the accused and the protection of the public.' " *Carroll v. State,* 740 N.E.2d 1225, 1234 (Ind.Ct.App.2000) (quoting *Gordy v. State,* 674 N.E.2d 190, 191 (Ind.Ct.App.1996)), *trans. denied.* That said, we find that the same standard

should apply to an individual who has been involuntarily committed to out-patient therapy. It should only follow that special conditions imposed upon an individual placed in out-patient commitment must be reasonably designed to protect the individual as well as the general public.

Here, the special condition preventing Golub from harassing or assaulting others was properly imposed because there is evidence in the record that it bears a reasonable relationship to Golub's treatment and to the protection of the public. The record indicates that Golub threatened his brother, sister-in-law, and other family members, Appellant's App. p. 26, and left a threatening voicemail for his sister-in-law that indicated he was watching her house from across the street. Tr. p. 31–32. Thus, there was sufficient evidence in the record for the trial court to conclude that requiring that Golub refrain from harassing or assaulting family members bears a reasonable relationship to his treatment and to the protection of his family.[6]

With respect to the condition prohibiting Golub from consuming alcohol or drugs other than those prescribed by a doctor, we note that the record is devoid of any evidence showing that Golub used or abused alcohol or drugs. Indeed, the subject of alcohol and drug use was not at issue at any time during the hearing, nor does it appear anywhere else in the record. Neither Dr. Giles, nor Marshall, nor Lisa, nor the trial court ever commented on alcohol and drug use, and there is, there-

---

**5.** Golub does not contest the other three special conditions imposed by the trial court. Insofar as those conditions apply to Golub as an out-patient, therefore, they are not before us and remain valid.

**6.** Although Golub argues that this condition is akin to putting a protective order in place without having to make the showing neces-

sary for a protective order, Appellant's Br. p. 13, the condition did not preclude Golub from seeing, speaking or visiting with any family member. The condition merely prevents him from assaulting or harassing his family members, and is therefore not analogous to a protective order.

fore, no evidence to suggest that such a prohibition bears any relationship at all to Golub's treatment or the protection of the public.

Although Dr. Giles suggests on appeal that it was permissible for the trial court to take judicial notice of the fact that alcohol is a "known depressant" and "could interact with Golub's treatment in unpredictable ways," Appellee's Br. p. 22, there is no evidence suggesting that the trial court did take judicial notice of this fact. Moreover, there is no evidence that the suggestion that Dr. Giles posits on appeal was actually the rationale used by the trial court in imposing this condition. In short, there is simply no evidence in the record about alcohol or drug use or the reasons for the imposition of this condition, and it was therefore improperly imposed.

The judgment of the trial court is affirmed in part and reversed in part with instructions to strike all special conditions from the order of commitment insofar as they apply to Golub's in-patient care and to strike the special condition prohibiting Golub from consuming alcohol and drugs from the order of commitment altogether.

KIRSCH, C.J., and ROBB, J., concur.