**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jan 30 2014, 6:18 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**JOEL M. SCHUMM**
Indianapolis, Indiana

ATTORNEY FOR APPELLEE:

**CHADWICK C. DURAN**
Office of Regional Counsel
U.S. Department of Veterans Affairs
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN THE MATTER OF THE CIVIL COMMITMENT OF T.K., | ) | |
| | ) | |
| | ) | |
| Appellant-Respondent, | ) | |
| | ) | |
| vs. | ) | No.  49A02-1310-MH-878 |
| | ) | |
| DEPARTMENT OF VETERANS AFFAIRS, RICHARD L. ROUDEBUSH VA MEDICAL CENTER, | ) | |
| | ) | |
| | ) | |
| | ) | |
| Appellee-Petitioner. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Gerald S. Zore, Judge
Cause No. 49D08-9906-MH-582

**January 30, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BAILEY, Judge**

**Case Summary**

T.K. was involuntarily committed to the VA Medical Center. He now appeals.

We affirm.

**Issues**

T.K. raises two issues for our review, which we restate as:

I.      Whether there is sufficient evidence to support T.K.'s involuntary commitment; and

II.     Whether the trial court abused its discretion by relying on hearsay as substantive evidence.

**Facts and Procedural History**

In 1996, T.K. was diagnosed with severe depression with psychotic features and the potential for schizophrenia. He has more recently been diagnosed with chronic paranoid schizophrenia and a paranoid personality disorder. He was involuntarily committed to Community Hospital for a year in 2012, and he voluntarily committed himself to the VA Medical Center for one month in 2013. T.K. was discharged from the VA Medical Center in February 2013 with instructions to receive monthly injections of a long-acting anti-psychotic medication, but he failed to return for them.

On October 9, 2013, the VA Medical Center filed an Application for Emergency Detention of a Mentally Ill and Dangerous Person after T.K. placed flyers on cars in the parking lot of a mental health center. The flyers detailed the alleged criminal history of his ex-wife's current husband. T.K. then went into the center and screamed at staff members, who were so fearful that T.K. would retaliate against them in a violent manner that a

psychiatrist at the center asked to be informed if T.K. was discharged so the center could take security precautions. The application also alleged that T.K. was delusional, angry, disorganized, and believed he was being conspired against, and that he had threatened to kill his ex-wife's husband and children. Dr. David Wagner, who filed an emergency statement in support of the application, stated that T.K. was known to him for his "violent paranoid delusional threats." Appellant's App. p. 16.

T.K. was detained that evening and examined by Dr. Joseph Bishara on October 15, 2013. Dr. Bishara's physician's statement provides that T.K. continued to exhibit threatening or inappropriately aggressive behavior, which caused others to fear for their personal safety. In addition, the physician noted that T.K. "endorse[d] paranoia of the government, of Catholics, of medical personnel, of pharmaceutical companies, and of psychiatrists trying to hurt him." Appellant's App. p. 20.

At the October 18, 2013 hearing on the application, Dr. Bishara testified that T.K. accused a wide range of both people and institutions, such as his ex-wife, her husband, members of the VA Medical Center, and members of other healthcare teams, of targeting him for the purpose of causing him harm. He therefore felt justified in pursuing these people and exhibiting aggressive and threatening behavior towards them. Dr. Bishara further testified that there are "multiple aggressive disrupt[ive] behaviors listed in [T.K.'s] healthcare record," and that T.K. lacked any insight into his mental illness and did not follow through with medications that would improve the symptoms of his mental illness. Tr. p. 13. Dr. Bishara also testified over the objection of T.K.'s counsel that T.K.'s son, Z.K., told him that

T.K. had ammunitions expertise from his time as a military engineer and that T.K. had a Facebook posting referencing a specific type of explosive.

T.K. testified that he is disabled with hearing loss from working with explosives in the military. He also testified that his Facebook page mentions a Claymore explosive and explained that this reference to an explosive was actually a poem that he wrote while incarcerated. T.K. further explained that he selected the term Claymore explosive because it rhymed with the next sentence in the poem.

Following the hearing, the trial court concluded that T.K. was both dangerous to others and gravely disabled and issued an Order of Commitment involuntarily committing T.K. to the VA Medical Center "until discharged or until the Court terminates the commitment." Appellant's App. p. 13.

## Sufficiency

T.K. first argues that there is insufficient evidence to support his involuntary commitment. When reviewing a challenge to the sufficiency of the evidence with respect to commitment proceedings, we will only look to the evidence most favorable to the trial court's decision and all reasonable inferences to be drawn therefrom. Golub v. Giles, 814 N.E.2d 1034, 1038 (Ind. Ct. App. 2004), trans. denied. In reviewing the evidence supporting the judgment, we may neither reweigh the evidence nor judge the credibility of the witnesses. Id. Where the evidence is in conflict, we are bound to view only that evidence that is most favorable to the trial court's judgment. Id. If the trial court's commitment order represents a conclusion that a reasonable person could have drawn, we will affirm the order even if other

4

reasonable conclusions are possible. Id.

A trial court may order the commitment of an individual if a petitioner proves by clear and convincing evidence that the individual is 1) mentally ill and 2) either dangerous or gravely disabled. Ind.Code § 12-26-7-5. T.K. does not challenge the trial court's finding that he suffers from a mental illness, namely chronic paranoid schizophrenia. Rather, he argues that the trial court erred in finding that he is both dangerous and gravely disabled. In order to carry its burden of proof, the petitioner is not required to prove that the individual is both dangerous and gravely disabled. C.J. v. Health and Hospital Corporation of Marion County, 842 N.E.2d 407, 409 (Ind. Ct. App. 2006). We therefore need only address whether the evidence in this case was sufficient to support the trial court's finding that T.K. is dangerous.

Indiana Code section 12-7-2-53 defines dangerous as "a condition in which an individual as a result of mental illness presents a substantial risk that the individual will harm the individual or others." Dangerousness must be shown by clear and convincing evidence indicating that the behavior used as an index of a person's dangerousness would not occur but for the person's mental illness. Commitment of M.M. v. Clarian Health Partners, 826 N.E.2d 90, 97 (Ind. Ct. App. 2005), trans. denied. Importantly, a trial court is not required to wait until harm has nearly or actually occurred before determining that an individual poses a substantial risk of harm to others. Matter of Commitment of Gerke, 696 N.E.2d 416, 421 (Ind. Ct. App. 1998) (holding that a commitment premised upon a trial court's prediction of dangerous future behavior, without prior evidence of the predicted conduct, was valid and

5

observing "[t]he old adage of 'the dog gets one bite' does not, and should not, apply in the context of commitment proceedings, despite the severe restrictions on liberty imposed by commitment to a mental facility.")

Here, our review of the evidence reveals that T.K. has a long history of mental illness with a current diagnosis of chronic paranoid schizophrenia and a paranoid personality disorder. This petition for involuntary commitment does not stem from an isolated incident. In 2012, T.K. was involuntarily committed at Community Hospital for one year. In 2013, he so scared staff members at a local mental health center that they asked to be notified if he was released so they could take security precautions. He believed that medical professionals and his ex-wife are targeting him so he felt justified in exhibiting aggressive and threatening behavior towards them. He has threatened to kill his ex-wife. He also lacked any insight into his illness and did not follow through with recommendations for medication that would help with its symptoms.

The VA Medical Center provided clear and convincing evidence that T.K. is dangerous as the result of his mental illness. This evidence supports T.K.'s involuntary commitment.

<u>Evidence</u>

T.K. also argues that the "trial court erred in admitting and relying on hearsay as substantive evidence when a testifying doctor recounted statements the Respondent's son had told him." Appellant's Br. p. 5. Specifically, T.K. refers to his son's testimony that T.K. had some ammunitions expertise from his time as a military engineer and that T.K. had a

6

Facebook posting referencing a specific type of explosive.

The admission of evidence is a determination entrusted to the discretion of the trial court. Adkins v. State, 703 N.E.2d 182, 186 (Ind. Ct. app. 1998). We will reverse a trial court's decision only when the court's action is clearly against the logic and effect of the facts and circumstances before the court. Id.

Although a physician in a civil commitment hearing may consider inadmissible hearsay in formulating his expert opinion regarding a patient's mental condition, hearsay cannot serve as substantive evidence to support an involuntary commitment. Commitment of M.M. v. Clarian Health Partners, 826 N.E.2d 90, 95 (Ind. Ct. App. 2005), trans. denied. However, any error in the consideration of such evidence as substantive evidence is harmless if there was other admissible evidence to support the commitment order. Id. Here, assuming that the trial court relied on hearsay as substantive evidence, we have found other admissible evidence to support the commitment order. Under these circumstances, any error in the admission of the evidence was harmless. See id.

**Conclusion**

There is sufficient evidence to support T.K.'s involuntary commitment, and any error in the admission of hearsay evidence was harmless.

Affirmed.

FRIEDLANDER, J., and KIRSCH, J., concur.