## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 19 2019, 10:16 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Valerie K. Boots
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Bryan H. Babb
Sarah T. Parks
Bose McKinney & Evans, LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of the Civil Commitment of J.G., <br><br> *Appellant-Respondent,* <br><br> v. <br><br> Health & Hospital Corp. of Marion County d/b/a Eskenazi Health/Midtown CMHC, <br><br> *Appellee-Petitioner* | June 19, 2019 <br><br> Court of Appeals Case No. 18A-MH-2763 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Steven R. Eichholtz, Judge <br> The Honorable Melanie Kendrick, Magistrate <br><br> Trial Court Cause No. 49D08-1810-MH-41440 |

**Pyle, Judge.**

# Statement of the Case

J.G. ("J.G.") appeals the trial court's order temporarily involuntarily committing him to Eskenazi Health Midtown Community Mental Health ("Eskenazi") for a period not to exceed ninety days. He argues that there is insufficient evidence to support the commitment. Finding sufficient evidence, we affirm the temporary involuntary commitment.

We affirm.[1]

# Issue

Whether there is sufficient evidence to support the commitment.

# Facts

The probative evidence and reasonable inferences supporting the commitment reveal that in September 2018, J.G., who is a college graduate and who owns his own painting company, was at his mother's ("Mother") house when he suddenly fell backwards in a "fainting spell." (Tr. at 24). "His eyes were open but they were fluttering very fast. His hands were pale. And he couldn't really respond." (Tr. at 26). Mother took J.G. to Community South Hospital, where J.G. was diagnosed with depression and anxiety. After speaking with a doctor

---

[1] We note that it is possible that J.G. has been discharged from the mental health facility, in which case this matter would be moot. Although we generally dismiss cases that are deemed to be moot, such cases may be decided on their merits where they involve questions of great public interest that are likely to recur. *See Golub v. Giles*, 814 N.E.2d 1034 (Ind. Ct. App. 2004), *trans. denied*. The question of how persons subject to involuntary commitment are treated by our trial courts is one of great importance to society. *Id.* We will therefore address the issue in this case.

from Community North Behavioral Health Center ("Community"), J.G. went to that facility and stayed there for ten days. While at Community, J.G. "was very paranoid" and refused treatment. (Tr. at 27). When J.G. was released from Community, he was instructed to take an anti-psychotic medication for thought disorders, but he failed to do so.

[3] Shortly thereafter, after an incident involving J.G., his mother, and a knife, J.G. was admitted to Eskenazi's mental health recovery unit. On October 11, Eskenazi filed an Application for Emergency Detention wherein it alleged that J.G. was "suffering from a psychiatric disorder." (App. Vol. 2 at 11). The petition further alleged that J.G. was "paranoid, picked up a knife, off meds, his family is afraid of him, he has thoughts of hurting himself." (App. Vol. 2 at 11). Five days later, Eskenazi filed a report following emergency detention, which alleged that J.G. was suffering from an unspecified psychosis.

[4] Two days later, the trial court held a commitment hearing wherein J.G. stipulated to the expertise of Dr. Dana Hardin ("Dr. Hardin"), who is a psychiatrist. Dr. Hardin testified that J.G. had been under her care for the previous week, and that she had examined him every day since his admission to Eskenazi. Dr. Hardin diagnosed J.G. with non-specified psychosis, which "manifest[ed] itself as a thought disorder, inability to eat, inability to converse on his behalf very well and not [] able to accept any type of care." (Tr. Vol. 2 at 7). J.G. had refused to take medications, declined out-of-room activities, and declined talk therapy. Dr. Hardin further testified that J.G. was "having trouble processing simple thoughts. Just even questions and answers." (Tr. Vol. 2 at 7).

[5] According to Dr. Hardin, the psychosis impaired J.G.'s ability to function day to day, and he was having difficulty working at his painting business. (Tr. Vol. 2 at 8). Dr. Hardin also explained that she wanted to prescribe J.G. Risperidone, which is an antipsychotic oral medication that works fairly quickly. Once the Risperidone had stabilized J.G., Dr. Hardin wanted him to participate in outpatient therapy and medication. She asked the trial court to temporarily involuntary commit J.G. to Eskenazi for a minimal stay so that J.G. "could function again back to his normal [] self." (Tr. Vol. 2 at 9). There was no testimony that J.G. suffered from any physical condition or ailment.

[6] Following the hearing, the trial court issued an order finding that J.G. was suffering from "Psychosis, Unspecified, which is a mental illness as defined in I.C. 12-7-2-130[]" and committing him to Eskenazi. (App. Vol. 2 at 7). J.G. appeals the commitment.

# Decision

[7] J.G. argues that there is insufficient evidence to support the trial court's order temporarily involuntarily committing him to the care of Eskenazi. Specifically, his sole contention is that there is insufficient evidence to support the trial court's finding that he suffers from mental illness.

[8] The purpose of civil commitment proceedings is to protect the public and to ensure the rights of the person whose liberty is at stake. *Civil Commitment of T.K. v. Dep't of Veterans Affairs*, 27 N.E.3d 271, 273 (Ind. 2015). Given the liberty interest at stake, the serious stigma involved, and the adverse social

consequences that accompany such physical confinement, a proceeding for an involuntary civil commitment is subject to due process requirements. *Id.* In order to protect the due process rights of a person subject to commitment, the facts justifying an involuntary commitment must be shown by clear and convincing evidence. *Id.*

[9] This standard of proof communicates the relative importance our legal system attaches to a decision ordering an involuntary commitment, and it also has the function of reducing the likelihood of inappropriate commitments. *P.B. v. Evansville State Hosp.*, 90 N.E.3d 1199, 1202 (Ind. Ct. App. 2017). When we review the sufficiency of the evidence supporting an involuntary civil commitment, we will affirm if, after considering the probative evidence and reasonable inferences supporting the decision, a reasonable trier of fact could have found the necessary elements proven by clear and convincing evidence. *Id.* We do not reweigh the evidence, nor do we judge witness credibility. *Id.*

[10] "An individual who is alleged to be mentally ill and either dangerous or gravely disabled may be committed to a facility for not more than ninety (90) days." IND. CODE § 12-26-6-1. Mental illness is defined as "a psychiatric disorder that [] substantially disturbs an individual's thinking, feeling, or behavior; *and* [] impairs the individual's ability to function. The term includes mental retardation, alcoholism, and addiction to narcotics or dangerous drugs." IND.CODE § 12-7-2-130 (emphasis added).

[11] Here, at the commitment hearing, J.G. stipulated to the expertise of Dr. Hardin, who was his treating psychiatrist. Dr. Hardin testified that J.G. had been under her care for the previous week and that she had examined him every day since his admission to Eskenazi. Dr. Hardin diagnosed J.G. with non-specified psychosis, which "manifest[ed] itself as a thought disorder, inability to eat, inability to converse on his behalf very well and not [] able to accept any type of care." (Tr. Vol. 2 at 7). J.G. had refused to take medications, declined out-of-room activities, declined talk therapy, and was "having trouble processing simple thoughts. Just even questions and answers." (Tr. Vol. 2 at 7). According to Dr. Hardin, the psychosis impaired J.G.'s ability to function day to day. Dr. Hardin also explained that she wanted to prescribe J.G. Risperidone, which is an antipsychotic oral medication, to stabilize him. There was no testimony that J.G. suffered from any physical condition or ailment.

[12] From this evidence, the trial court could have reasonably concluded that there was clear and convincing evidence that J.D. was mentally ill as defined by INDIANA CODE § 12-7-2-130 because he had a psychiatric disorder, psychosis, which was substantially disturbing his thinking, feeling, and behavior. There is sufficient evidence to support J.G.'s temporary involuntary commitment, and we affirm the trial court's order.[2]

---

[2] J.G. is correct that "Indiana's involuntary commitment statutes may not be used to force an adult who is not mentally ill to accept medical treatment." (J.G.'s Br. at 8). However, his argument that "the evidence indicated that [he] suffered from a physical illness rather than a mental illness" is an invitation for this Court to reweigh the evidence. (J.G.'s Br. at 9). This we cannot do. *See P.B.*, 90 N.E.3d at 1202.

[13]    Affirmed.

Riley, J., and Bailey, J., concur.