

ATTORNEY FOR APPELLANT

Valerie K. Boots
Marion County Public Defender
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Jessica Barth
Eskenazi Health
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of the Civil Commitment of: | June 27, 2017 |
| M.L., | Court of Appeals Case No. 49A02-1612-MH-2823 |
| *Appellant-Respondent,* | Appeal from the Marion Superior Court |
| v. | The Honorable Steven R. Eichholtz |
| Eskenazi Health / Midtown Mental Health CMHC, | Trial Court Cause No. 49D08-1612-MH-42227 |
| *Appellee-Petitioner.* | |

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Respondent, M.L., appeals the trial court's grant of Appellee-Petitioner's, The Health and Hospital Corporation of Marion County d/b/a/ Eskenazi Health/Midtown Mental Health CMHC (Eskenazi), request for temporary commitment.

We affirm in part, reverse in part, and remand with instructions.

# ISSUES

M.L. raises one issue for our review, which we restate as: Whether Eskenazi presented sufficient evidence to support the special condition of commitment.

Eskenazi presents one issue, which we restate as: Whether Eskenazi is entitled to appellate attorney's fees pursuant to Indiana Appellate Rule 66(E).

# FACTS AND PROCEDURAL HISTORY

On November 14, 2016, thirty-year-old M.L. was admitted to the inpatient unit at Eskenazi hospital on an emergency detention. Eskenazi filed a petition for involuntary commitment that same day, which was denied by the trial court. M.L. was released from the hospital on November 22, 2016.

On November 24, 2016, M.L. returned to the hospital to speak with Dr. Aimee Patel (Dr. Patel), the attending psychiatrist. When he learned that Dr. Patel was not there that day, M.L. asked the staff for a list of the chemicals he had been exposed to during his recent hospitalization. M.L. left, but returned on November 28, 2016, again requesting to speak with Dr. Patel. Dr. Patel

observed M.L. to be "very disorganized, pressured, paranoid. Speaking about be[ing] a spy and recording everything. [And] [n]eeding a list of all chemical exposures." (Transcript p. 7). She became concerned and filed another petition, seeking an emergency detention of M.L. The application included a physician's emergency statement, which was signed on the same date. Dr. Patel re-admitted M.L. to the inpatient psychiatric unit. The hospital filed a Report Following Emergency Detention on November 30, 2016, which included a physician's statement.

[7] Upon M.L.'s re-admission, Dr. Patel determined that "[h]e [wa]s having a very clear episode of bi-polar mania. Which has led to [a] very impaired thought process. He [wa]s quite paranoid, quite delusional, very pressured." (Tr. p. 7). M.L. was given emergency medication for agitation several times at the hospital but refused all offered medications. M.L. was "placed in restraints for safety. He had made a number of statements about – actually about killing himself[.]" (Tr. p. 7). He made threatening statements and gestures toward other people on the unit and spoke of purchasing a gun for protection.

[8] On December 5, 2016, the trial court conducted an evidentiary hearing. During the proceedings, Dr. Patel testified that M.L. was both dangerous to himself and others, and gravely disabled by his mental illness in that he was not able to provide his own food, clothing, shelter, and basic needs. Dr. Patel also requested that the trial court impose certain special conditions on M.L. as part of the Order of Commitment, including that he "not use alcohol or drugs, other than those prescribed by a certified medical doctor." (Tr. pp. 18-19). At the

close of the evidence, the trial court ordered M.L. to be involuntarily committed to Eskenazi hospital on a temporary basis for a period not to exceed ninety days. Among the special conditions made a part of the Commitment Order was the trial court's mandate that "upon attaining outpatient status," M.L. "shall not use alcohol or drugs, other than those prescribed by a certified medical doctor." (Appellant's App. Vol. II, p. 7).

[9] M.L. now appeals. Additional facts will be provided as necessary.

# DISCUSSION AND DECISION

### I. *Mootness and Waiver*

[10] Eskenazi's appellate brief is entirely devoted to devising legal avenues so as not to address the merits of M.L.'s appeal. However, all of these contentions fail due to an apparent misunderstanding of the legal mechanics of objection and waiver.

### A. *Mootness*

[11] In their respective appellate briefs, Eskenazi advocates and M.L. concedes that the case is moot because the Order of Commitment expired on March 5, 2017. Therefore, this court cannot render effective relief to M.L. *See In re Commitment of T.K.*, 993 N.E.2d 245, 248 (Ind. Ct. App. 2013), *trans. denied*. "When a court is unable to render effective relief to a party, the case is deemed moot and usually dismissed." *Id.* However, although moot cases are usually dismissed, Indiana courts have long recognized that a case may be decided on its merits

under an exception to the general rule when the case involves questions of "great public interest." *Id.* Typically, cases falling in the "great public interest exception" contain issues that are likely to recur. *Id.*

[12] "The question of how persons subject to involuntary commitment are treated by our trial courts is one of great importance to society." *Id.* (*quoting In Re Commitment of J.B.*, 766 N.E.2d 795, 798 (Ind. Ct. App. 2002)). "Indiana statutory and case law affirm that the value and dignity of the individual facing commitment or treatment is of great societal concern." *Id.* (*citing In Re Mental Commitment of M.P.*, 510 N.E.2d 645, 646 (Ind. 1987)). The instant case involves the proof necessary to impose special conditions upon attaining outpatient status. Because this is an issue of great public importance that is likely to recur and for which Indiana case law is practically undeveloped, we will address it here.

## B. *Waiver*

Next, Eskenazi advances that M.L. waived this appeal, as he failed to object to "the imposition of the special condition." (Appellee's Br. p. 8). Finding "the record replete with M.L.'s opportunities to object to the imposition of the special condition," Eskenazi reiterates our well-known doctrine that "[a] party may not present an argument or an issue to an appellate court unless the party raised that argument or issue to the trial court." (Appellee's Br. p. 9) (reference omitted); *see, e.g.*, *Carson v. Ross*, 509 N.E.2d 239, 243 (Ind. Ct. App. 1987), *reh'g denied, trans. denied*. Consequently, Eskenazi maintains that "[t]o choose to

advance this issue to a full appeal is a waste of the scarce resources of three different governmental entities: the public defender, [Eskenazi], and of course this Court." (Appellee's Br. p. 9)

[13]  It is clear that Eskenazi harbors a misunderstanding of what constitutes waiver and what represents a meritorious appeal. Eskenazi claims the first waiver to be present when M.L. failed to object to Dr. Patel's direct testimony as to which particular special condition she was requesting the trial court to impose. Then, Eskenazi argues that M.L. failed to ask Dr. Patel "why she was requesting the special condition or refer to it in any way" during cross-examination. (Appellee's Br. p. 9). The hospital contends that "[i]f M.L. had a concern about the particular condition imposed by the trial court, M.L. should have raised it at the hearing, which would have allowed Dr. Patel to explain why it was in M.L.'s best interest not to drink alcohol or use drugs during his acute episode of bi-polar mania." (Appellee's Br. p. 9). And lastly, Eskenazi takes issue with M.L.'s counsel's silence when the trial court ruled in favor of Eskenazi during the proceedings and imposed "[a]s conditions of the commitment, if placed outpatient, [M.L.] . . . . [shall] not use alcohol or drugs other than those prescribed by a physician." (Tr. p. 34).

[14]  Because civil commitment is a significant deprivation of liberty that requires due process protections, the burden falls on the petitioner. *Addington v. Texas*, 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979). Accordingly, the burden rested with Eskenazi to present sufficient evidence to support the imposition of the special condition. However, rather than acknowledging that it carried the

burden of proof by establishing the necessary evidence, Eskenazi now transfers this burden and places it squarely on M.L. by characterizing it as a failure to object to the imposition of the special condition. In other words, Eskenazi faults M.L. for failing to make the case for it. During Dr. Patel's testimony it was incumbent upon Eskenazi to elicit sufficient evidence with respect to the particularities of its request and its reason to impose the challenged special condition. There was nothing for M.L. to object to, and M.L. was not under a burden to present evidence as to the special condition's necessity. Silence was indeed M.L.'s best strategy here.

[15] When the trial court mandated the imposition of the special condition during the hearing, the trial court issued its judgment. At that time, the proper legal avenue to challenge a trial court's decision is not by raising an objection—as no evidence is presented—but by either filing a motion to correct error or by filing a notice of appeal. Clearly, M.L. choose the latter, and we find that his appeal has merit.

## II. *Special Condition*

[16] M.L. contends that the trial court abused its discretion when it included the special condition in its Order of Commitment and therefore, the condition should be stricken. Indiana Code section 12-26-14-3 permits a trial court to order special conditions when an individual is involuntarily committed to out-patient care:

The court may require an individual ordered to enter an outpatient therapy program [] to do the following:

(1) Follow the therapy program the individual enters.

(2) Attend each medical and psychiatric appointment made for the individual.

(3) Reside at a location determined by the court.

(4) Comply with other conditions determined by the court.

Such special conditions "must be reasonably designed to protect the individual as well as the general public." *Golub v. Giles*, 814 N.E.2d 1034, 1041 (Ind. Ct. App. 2004), *trans. denied*. There must be "sufficient evidence in the record for the trial court to conclude" that the special condition "bears a reasonable relationship" to the committed individual's treatment and to the protection of others. *Id*. When we review a challenge to the sufficiency of this evidence, we look to the evidence most favorable to the trial court's decision and draw all reasonable inferences from that decision. *Id*. at 1040. We may neither reweigh the evidence nor judge the credibility of the witnesses. *Id*.

[17] The propriety of an appellate challenge to a special condition of commitment has been considered only twice previously: *Golub v. Giles*, 814 N.E.2d 1034 (Ind. Ct. App. 2004), *trans. denied*, and *M.M. v. Clarian Health Partners*, 826 N.E.2d 90 (Ind. Ct. App. 2005), *trans. denied*. In both precedents, we struck the special condition.

[18]     In *Golub*, the trial court imposed conditions prohibiting Golub from "harassing or assaulting family members or others," and from "using alcohol or drugs other than those prescribed by a certified medical doctor." *Golub*, 814 N.E.2d at 1040. Golub appealed and argued that the conditions were improper as they were not requested by the physician, they were not based on the physician's assessment of Golub, and they bore no relationship to the reasons for his commitment. *Id.* Because we found evidence in the record that Golub had threatened family members, we concluded that the special condition preventing harassment bore a reasonable relationship to his treatment and was properly imposed. *Id.* at 1041. However, finding "the record [] devoid of any evidence that Golub used or abused alcohol or drugs," we concluded that special condition improperly imposed. *Id.* "Although [Golub's physician] suggests on appeal that it was permissible for the trial court to take judicial notice of the fact that alcohol is a 'known depressant' and 'could interact with Golub's treatment in unpredictable ways,' there is no evidence of this suggestion in the record." *Id.*

[19]     Less than a year after our decision in *Golub*, we again considered special conditions ordered as part of involuntary outpatient treatment in *M.M.*

> With respect to the condition prohibiting M.M. from consuming alcohol or drugs, we observe the record is devoid of any evidence showing M.M. used or abused alcohol or drugs. The subject of alcohol or drug use was never raised during the hearing. Because there is no evidence in the record to suggest that such a prohibition bears any relationship to M.M.'s treatment or the

protection of the public, we agree with the parties that the condition was improperly imposed.

*M.M.*, 826 N.E.2d at 99.

[20] Likewise here, the record is barren as to M.L.'s use of alcohol or drugs and there is no suggestion that the special condition bears any relationship to M.L.'s treatment or the protection of the public. During her testimony, Dr. Patel requested the trial court to prohibit M.L. to abuse alcohol or to use any drugs other than those prescribed by a certified medical doctor. When asked on direct examination, "[d]oes he use any substances; alcohol or drugs?" (Tr. p. 10). Dr. Patel responded, "No." (Tr. p. 10). In a footnote, Eskenazi claims that "[i]t should be obvious that M.L.'s use of alcohol or drugs would have exacerbated his conditions of grave disability and dangerousness." (Appellee's Br. p. 14, fn. 2). But, as in *Golub*, Eskenazi did not present any evidence supporting this 'obvious' statement. Accordingly, as there is insufficient evidence to support the imposition of this special condition, we affirm the trial court's order in part but reverse in part with instruction to strike the special condition prohibiting M.L. from consuming alcohol and drugs, not prescribed by a certified medical doctor, from the Order of Commitment.

### III. *Appellate Attorney's Fees*

[21] Eskenazi contends that it is entitled to appellate attorney's fees pursuant to Indiana Appellate Rule 66(E), claiming that

> [b]ringing a narrow appeal, based on a single argument that was
> clearly waived—with the failure to raise that issue below actually
> creating the ostensible basis for the appeal (i.e., a lack of evidence
> about a condition)—cannot be within the bounds of acceptable
> advocacy.

(Appellee's Br. p. 14).

[22] Indiana Appellate Rule 66(E) provides, in pertinent part, that "[t]he Court may assess damages if an appeal . . . is frivolous or in bad faith. Damages shall be in the Court's discretion and may include attorney's fees." Our discretion to award attorney's fees under Indiana Appellate Rule 66(E) is limited, however, to instances when an appeal is permeated with meritlessness, bad faith, frivolity, harassment, vexatiousness, or purpose or delay. *Thacker v. Wentzel*, 797 N.E.2d 342, 346 (Ind. Ct. App. 2003). Additionally, while Indiana Appellate Rule 66(E) provides this court with discretionary authority to award damages on appeal, we must use extreme restraint when exercising this power because of the potential chilling effect upon the exercise of the right to appeal. *Id*.

[23] Rather than being permeated with meritlessness or bad faith, M.L.'s appeal is an entirely proper exercise of his constitutional rights to due process and appellate review, based on established precedent of this court. Moreover, we are taken aback with Eskenazi's request for appellate attorney's fees to be assessed against another arm of the same Marion County government. The Marion County Public Defender and Eskenazi serve a similar clientele—the most indigent and vulnerable in our community—and both are a vital part of

that same public safety net for Marion County. To seek a financial retribution from the Public Defender Agency for protecting involuntarily committed individuals' constitutional rights based on Eskenazi's own misunderstanding of the legal mechanics of objection and waiver is remarkable. We deny Eskenazi's request.

## CONCLUSION

[24] Based on the foregoing, we affirm the trial court's order in part but reverse in part with instruction to strike the special condition prohibiting M.L. from consuming alcohol and drugs, not prescribed by a certified medical doctor, from the Order of Commitment. We deny Eskenazi's request for appellate attorney's fees pursuant to Indiana Appellate Rule 66(E).

[25] Affirmed in part, reversed in part, and remanded with instructions.

[26] Najam, J. concurs

[27] Bradford, J. dissents with separate opinion

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Civil
Commitment of:

M.L.,

*Appellant-Respondent,*

v.

Eskenazi Health / Midtown
Mental Health CMHC,

*Appellee-Petitioner.*

Court of Appeals Case No.
49A02-1612-MH-2823

**Bradford, Judge, dissenting.**

[28] I respectfully disagree with the majority's conclusion that M.L. adequately preserved his claim that Eskenazi presented insufficient evidence to support a special condition of his commitment, specifically, that he refrain from using

alcohol or unauthorized drugs should he attain outpatient status. Consequently, I respectfully dissent.

[29] "'A party generally waives appellate review of an issue or argument unless the party raised that issue or argument before the trial court.'" *Benton Cty. Remonstrators v. Bd. of Zoning Appeals of Benton Cty.*, 905 N.E.2d 1090, 1096 (Ind. Ct. App. 2009) (quoting *GKC Ind. Theatres, Inc. v. Elk Retail Inv'rs, LLC*, 764 N.E.2d 647, 652 (Ind. Ct. App. 2002)). M.L. had ample opportunity to object to the imposition of the special condition but did not do so at the trial court level. If M.L. *had* objected, I believe it is near certain that Eskenazi would have simply asked Dr. Patel if drugs or alcohol could interfere with M.L.'s prescribed medications, and she would have answered in the affirmative. See *Benton Cty. Remonstrators*, 905 N.E.2d at 1096-97 ("Had the Remonstrators raised this issue at the trial court level, then the parties would have had an opportunity to develop a record and provide the court with evidence as to when the clerk mailed the panel. The Remonstrators cannot now raise such a fact-sensitive issue without raising it first before the trial court and giving the other parties an opportunity to address the issue and fully develop a record for appeal. Therefore, we conclude that the Remonstrators have waived this argument."). Because I would conclude that M.L. has waived any challenge he might have had to the imposition of the special condition, I would affirm the judgment of the trial court.