## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Apr 29 2020, 11:17 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Deborah Markisohn
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Bryan H. Babb
Sarah T. Parks
Bose McKinney & Evans LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Civil Commitment of:
B.J.,

*Appellant-Respondent,*

v.

Health & Hospital Corporation of Marion County d/b/a Eskenazi Health Midtown Community Mental Health,

*Appellee-Petitioner,*

April 29, 2020

Court of Appeals Case No.
19A-MH-2523

Appeal from the Marion Superior Court

The Honorable Amy Jones, Special Judge

Trial Court Cause No.
49D08-1909-MH-39411

**Robb, Judge.**

# Case Summary and Issue

B.J. appeals the trial court's order of involuntary regular commitment at Eskenazi Health Midtown Community Mental Health ("Eskenazi"). He raises one issue which we restate as whether there was sufficient evidence to support a special condition to his order of commitment. Concluding that the evidence is insufficient to support such a special condition, we affirm in part, reverse in part, and remand with instructions.

# Facts and Procedural History

B.J. is thirty-nine years old, has a history of mental illness, and lives with his parents. In early 2019, B.J. was released from a one-year commitment during which he took his prescribed medication and had therapy monthly. Upon being discharged, he stopped taking his medication and his behavior became increasingly worse to a point where his parents were "fearful that he would harm [them]." [Transcript], Volume II at 17. Multiple times each day, B.J. would walk to a neighborhood playground where he would curse, use vulgar language, and yell; this concerned his neighbors, and some had considered calling the police. In September 2019, B.J.'s father filed an Application for Emergency Detention of Mentally Ill and Dangerous Person ("Application") with Eskenazi alleging B.J. was suffering from a psychiatric disorder. *See* Appellant's Appendix, Volume II at 13. Dr. Gregory Singleton, a doctor with Eskenazi, filed a Physician's Emergency Statement in support of the Application. After reviewing the Application and the Physician Statement, the

trial court issued an order for B.J. to be admitted to Eskenazi on an emergency detention and set the matter for a commitment hearing on September 26, 2019.

[3] At the commitment hearing, the trial court heard testimony from Dr. Carley Niehaus, Dr. Kenneth Smith, B.J.'s father, and B.J. Dr. Niehaus testified that B.J. suffered from Schizoaffective Disorder. Dr. Smith testified that B.J. made multiple threats to physically harm Dr. Smith and members of Dr. Smith's family. Drs. Niehaus and Smith both believed that B.J. was gravely disabled and dangerous to others as a result of his mental illness. B.J. testified,

> I am sober. I am drug free. And I am clear headed and not sick. I . . . was affiliated with this guy who was in the [Alcoholics Anonymous] program and I do not really appreciate their antics to be honest. But anyway, I think you are going to do the right thing today, judge.

Tr., Vol. II at 22. After hearing the evidence, the trial court found that B.J. suffers from Schizoaffective Disorder, is dangerous to himself or others, is gravely disabled, and is in need of custody, care and treatment at Eskenazi. The trial court ordered the regular commitment of B.J., involuntarily committing him to Eskenazi. The trial court also imposed five special conditions made part of the regular commitment, which included a mandate prohibiting B.J. from consuming "alcohol or drugs, other than those prescribed by a certified medical

doctor[,]" when he attains outpatient status.[1] Appealed Order at 2. B.J. now appeals.

# Discussion and Decision

## I. Standard of Review

Civil commitment proceedings have two purposes: to protect the public and to ensure the rights of the person whose liberty is at stake. *P.B. v. Evansville State Hosp.*, 90 N.E.3d 1199, 1202 (Ind. Ct. App. 2017). When reviewing the sufficiency of the evidence supporting a special condition in a civil commitment case, we look only to the evidence most favorable to the judgment and any reasonable inferences therefrom. *M.L. v. Eskenazi Health/Midtown Mental Health CMHC*, 80 N.E.3d 219, 223 (Ind. Ct. App. 2017). We will not reweigh the evidence or judge the credibility of the witnesses. *Id*. at 223-24. The burden rests upon the petitioner—in this case, Eskenazi—to present sufficient evidence to support the imposition of a special condition. *Id*. at 223.

## II. Sufficiency of the Evidence

B.J. contends there was insufficient evidence that the special condition prohibiting him from consuming alcohol or non-prescribed drugs bore a

---

[1] The trial court also imposed as special conditions that B.J.: 1) take all medications as prescribed, 2) attend all clinic sessions as scheduled, 3) maintain his address and phone number with the trial court and designated facility, and 4) not harass or assault family members or others. B.J. does not challenge any of these special conditions and therefore, we do not address them.

reasonable relationship to his mental health treatment or to the protection of the public. *See* Brief of the Appellant at 10. We agree.

[6] A trial court may impose special conditions on an individual who is involuntarily committed upon release to outpatient care. *Commitment of M.M. v. Clarian Health Partners*, 826 N.E.2d 90, 99 (Ind. Ct. App. 2005), *trans. denied*; *see also* Ind. Code § 12-26-14-3(4). However, the special conditions "must be reasonably designed to protect the individual as well as the general public." *Golub v. Giles*, 814 N.E.2d 1034, 1041 (Ind. Ct. App. 2004), *trans. denied*. There must be sufficient evidence in the record for the trial court to conclude that the special condition "bears a reasonable relationship" to the committed individual's treatment. *Id.*

[7] We first addressed the validity of special conditions of commitment in *Golub v. Giles*. There, Golub suffered from a bipolar disorder with psychotic symptoms. Golub had a well-documented history of behavior that included, inter alia, lunging at a hotel manager, threatening his family members, discussing suicide, and "exhibiting unpredictability that evinced a potential to strike out physically in frustration and anger." 814 N.E.2d at 1037. Following a commitment hearing, the trial court issued an order of regular commitment and imposed six special conditions, including a condition that Golub not use alcohol or drugs, other than those prescribed by a certified medical doctor. Golub appealed and with respect to the condition prohibiting him from consuming alcohol or drugs, we noted the record was "devoid of any evidence showing that Golub used or abused alcohol or drugs" nor was "the subject of alcohol and drug use . . . at

issue at any time during the hearing[.]" *Id*. at 1041. We concluded that the condition was improperly imposed because there was no evidence in the record suggesting the "prohibition bears any relationship at all to Golub's treatment or the protection of the public." *Id.* at 1042.

[8] Two Indiana cases have since followed the standard set forth in *Golub*. In *Commitment of M.M.*, M.M. suffered from bi-polar mania and was admitted as an inpatient at Methodist Hospital in their psychiatric unit. On appeal, M.M. argued, the hospital conceded, and we agreed that the condition prohibiting M.M. from consuming alcohol or drugs was improper because there was "no evidence in the record to suggest that such a prohibition [bore] any relationship to M.M.'s treatment or the protection of the public[.]" 826 N.E.2d at 99. Similarly, in *M.L.*, M.L. suffered from bi-polar mania and was admitted to Eskenazi on an emergency detention. At the evidentiary hearing, a doctor from Eskenazi testified that he was dangerous both to himself and others. When asked on direct examination whether M.L. used alcohol or drugs, the doctor responded that he did not. However, the doctor still requested that the trial court impose a special condition prohibiting M.L. from using alcohol or drugs, other than those prescribed by a certified doctor. The trial court agreed and imposed that special condition. On appeal, we struck the special condition prohibiting M.L. from consuming alcohol or drugs from the order of commitment, noting that "the record [was] barren as to M.L.'s use of alcohol or drugs and there [was] no suggestion that the special condition [bore] any relationship to M.L.'s treatment or the protection of the public." 80 N.E.3d at

224. Eskenazi argued that "[i]t should be obvious that M.L.'s use of alcohol or drugs would have exacerbated his conditions of grave disability and dangerousness." *Id*. But we rejected that argument, explaining that Eskenazi did not present any evidence supporting the "obvious" statement. *Id.*

[9] Likewise here, the record is devoid of any evidence as to B.J.'s use of alcohol or non-prescribed drugs and there is no evidence in the record that the special condition bears any relationship to B.J.'s treatment or to the protection of the public. Unlike the doctor in *M.L.*, neither Dr. Niehaus nor Dr. Smith was asked about B.J.'s alcohol or drug use or requested that the trial court prohibit such activity. The subject of alcohol or drugs was never raised by Eskenazi or the trial court, nor did the trial court make a finding that B.J. had an alcohol or drug problem. When B.J.'s father testified, he did not mention use of alcohol or drugs as an explanation for B.J.'s behavior. Instead, he believed that B.J.'s behavior was a result of his psychiatric disorder. Eskenazi claims that B.J.'s assertion at the commitment hearing that he was sober, drug free, and affiliated with a person in the Alcoholics Anonymous program supports the inference that he used alcohol or drugs in the past and thus, supports the special condition. *See* Brief of Appellee at 5-6. But B.J.'s statements alone, without more, cannot serve as the basis to suggest that he previously used alcohol or drugs such that a special condition prohibiting him from consuming alcohol or non-prescribed drugs is appropriate and we cannot speculate as to the connection. The burden, as we have stated, is on Eskenazi to establish that connection. *See M.L.*, 80 N.E.3d at 223. Moreover, Eskenazi failed to present

evidence showing how the special condition bore any relationship to the protection of the public. Similar to the patients in *Golub*, *Commitment of M.M.*, and *M.L.*, B.J. exhibited threatening and dangerous behavior to his family and the public. But, as in those three cases, Eskenazi as the petitioner did not present any evidence that would demonstrate a clear nexus between B.J.'s threatening and dangerous behavior and substance use. In fact, Dr. Niehaus testified that B.J.'s symptoms of Schizoaffective Disorder—delusions, disorganized speech, auditory hallucinations, mania, and mood episodes—are "not better explained by another medical condition *or substance use*." Tr., Vol. II at 8 (emphasis added).

[10]    In sum, Eskenazi has failed to meet its burden of presenting evidence to support the imposition of the special condition prohibiting B.J. from consuming alcohol or drugs, other than those prescribed by a certified medical doctor. Eskenazi also failed to show how the prohibition bore any relationship to B.J.'s treatment or to the protection of the public. The trial court improperly imposed the special condition and therefore, we reverse that part of the trial court's judgment and remand with instructions to strike the special condition prohibiting B.J. from consuming alcohol or non-prescribed drugs once he attains outpatient status. The remainder of the commitment order is affirmed.

# Conclusion

[11]    There is insufficient evidence to support the special condition prohibiting B.J. from consuming alcohol or non-prescribed drugs when he attains outpatient

status. Accordingly, we reverse that part of the trial court's judgment imposing the special condition prohibiting B.J. from consuming alcohol or non-prescribed drugs and affirm the remainder of the Order of Regular Commitment.

[12] Affirmed in part, reversed in part, and remanded with instructions.

May, J., and Vaidik, J., concur.