**In the Matter of the Commitment of A.L., Appellant–Respondent,**

v.

**WISHARD HEALTH SERVICES, MID-TOWN COMMUNITY MENTAL HEALTH CENTER, Appellee–Petitioner.**

No. 49A02–1001–MH–76.

Court of Appeals of Indiana.

Sept. 23, 2010.

Suzy St. John, Marion County Public Defender, Indianapolis, IN, Attorney for Appellant.

Phyllis J. Garrison, Wishard Health Services, Indianapolis, IN, Attorney for Appellee.

## OPINION

BARTEAU, Senior Judge.

### STATEMENT OF THE CASE

Appellant A.L. appeals the trial court's Order of Temporary Commitment ("the Order"). We affirm.

### ISSUES

A.L. raises three issues, which we consolidate and restate as:

I.  Whether the trial court committed fundamental error by allowing Appellee Wishard Health Services, Midtown Health Center ("Wishard") to state one ground for involuntary commitment in a pre-hearing filing and then present an additional ground for involuntary commitment at the final hearing; and

II.  Whether the Order is supported by clear and convincing evidence.[1]

### FACTS AND PROCEDURAL HISTORY

On December 17, 2009, A.H. was brought to Wishard from the Indiana Statehouse, where she was asking officials to help her get access to "child papers and wills" in Monticello, Indiana. Tr. p. 11. On December 18, 2009, Cynthia Schwomeyer, a Wishard employee, filed an Application for Emergency Detention of Mentally Ill and Dangerous Person, thereby beginning this case. Schwomeyer attached to the Application a statement by Dr. John Delaney. Dr. Delaney asserted that A.L. was "acutely psychotic, manic & paranoid. Homeless. Not able to meet basic needs." Appellant's App. p. 15.

On December 22, 2009, Dr. Stevens Fekete examined A.L. On that same day, Wishard, by social worker Ilene Morris, filed with the trial court a Report Following Emergency Detention ("the Report"). A Physician's Statement by Dr. Fekete was attached to the Report. On December 23, 2009, the trial court issued an order in which it noted that it had read the Report and ordered A.L. to be detained at Wishard pending a final hearing on December 28, 2009.

1.  A.L. has filed a motion for oral argument, which we have denied in a separate order.

On December 28, 2009, the trial court held a final hearing. After the hearing, the trial court issued the Order, in which the trial court ordered A.L. committed to Wishard's custody for a period not to exceed ninety days.[2] A.L. now appeals.

## DISCUSSION AND DECISION

### I. FUNDAMENTAL ERROR AND DUE PROCESS

■ A.L. contends that she was deprived of due process of law because Wishard cited one reason for involuntary commitment, severe disability, in the Physician's Statement but presented an additional reason, dangerousness, at the hearing. A.L. contends that Wishard was obligated to give her pre-hearing notice of every ground that supported Wishard's request for temporary involuntary commitment.

■ Involuntary civil commitment for medical treatment is a significant deprivation of liberty that requires due process protections. *C.J. v. Health & Hosp. Corp. of Marion County*, 842 N.E.2d 407, 409 (Ind.Ct.App.2006). Moreover, it is indisputable that involuntary commitment to a mental hospital after a finding of probable dangerousness to self or others can engender adverse social consequences to the individual. *Addington v. Texas*, 441 U.S. 418, 425–426, 99 S.Ct. 1804, 1809, 60 L.Ed.2d 323 (1979). Consequently, the burden falls on a petitioner (here Wishard) to prove by clear and convincing evidence that the individual is mentally ill and either dangerous or gravely disabled. *In re Commitment of M.M.*, 826 N.E.2d 90, 96 (Ind.Ct.App.2005), *reh'g denied, trans. denied.*

■ At the final hearing, A.L. did not object to Wishard's claim that she was dangerous to herself or others. It is well established that we may consider a party's constitutional claim waived when it is raised for the first time on appeal. *Hite v. Vanderburgh County Office of Family & Children*, 845 N.E.2d 175, 180 (Ind.Ct.App. 2006). A.L. attempts to avoid waiver by arguing that the admission of the evidence was fundamental error, which can be challenged at any time. Fundamental error is error which is a blatant violation of our concepts of fundamental fairness and in which the harm is substantial and apparent. *Matter of Commitment of Gerke*, 696 N.E.2d 416, 421 (Ind.Ct.App.1998). It is error which is so likely to have infected the verdict or judgment that confidence of the trial result has been undermined. *Id.*

At this point, it is useful to review the statutes that govern procedures for emergency and temporary involuntary civil commitments. In Indiana, a person may be detained in a mental health facility for not more than seventy-two hours if a written application for detention is filed with the facility. Ind.Code § 12–26–5–1. Before the end of the detention period, the superintendent of the facility or the person's attending physician shall submit a written report to the court. Ind.Code § 12–26–5–5. The report shall state that the person has been examined and state whether there is probable cause to believe that the individual is mentally ill and either dangerous or gravely disabled and requires continuing care and treatment. *Id.* If the report states that there is probable cause, the report must also recommend that the

---

**2.** A.L.'s term of temporary involuntary commitment has expired, and she may have been released from detention. Generally, we dismiss cases that are moot, but a moot case may be decided on its merits when it involves questions of great public interest, such as involuntary commitment, that are likely to recur. *In re Commitment of S.T.*, 930 N.E.2d 684, 687 (Ind.Ct.App.2010). Consequently, we will consider A.L.'s appeal on the merits.

trial court hold a hearing on the person's continued detention and recommend that the person be detained pending the hearing. Ind.Code § 12–26–5–7. The trial court must consider and act on the report within twenty-four (24) hours, and if the trial court deems it necessary, schedule a final hearing on continued involuntary commitment within ten (10) days. *See* Ind.Code §§ 12–26–5–8, 12–26–5–9, 12–26–5–11. If a petitioner is seeking temporary involuntary commitment, which is defined as a period less than ninety (90) days, the subject of the petition must be given notice of the time, place and date of the hearing.[3] Ind.Code §§ 12–26–6–1, 12–26–6–3.

In this case, A.L. notes that when Wishard filed the Report, which included Dr. Fekete's Physician's Statement, with the trial court prior to the final hearing, Dr. Fekete asserted in the Statement that A.L. was gravely disabled. As to dangerousness, Dr. Fekete simply stated "N/A." Appellant's App. p. 12. However, at the final hearing Wishard argued that A.L. was both dangerous and gravely disabled. A.L. analogizes the Report to a charging instrument in a criminal case and asserts that there is "fatal or material variance" between the Report and the evidence presented at trial. Appellant's Br. p. 9.

■ A.L. cites to no authority that supports her claim that the due process protections that are applicable to a charging instrument in a criminal case should also be applied to a report filed pursuant to Indiana Code section 12–26–6–5.[4] We note a charging instrument in a criminal proceeding serves a different purpose than the Report filed in this case. The purpose of a charging instrument is to provide a defendant with notice of the crime of which he or she is charged so that he or she is able to prepare a defense. *Brown v. State*, 830 N.E.2d 956, 963 (Ind.Ct.App. 2005). By contrast, the purpose of the Report is to inform the trial court: (1) that a mental health facility has examined a person that has been detained; and (2) whether the person is mentally ill and either dangerous or gravely disabled and requires continuing care and treatment. *See* Ind.Code § 12–26–5–5. If, after reviewing the report, the trial court decides to hold a hearing on the petitioner's request for temporary involuntary commitment, then the detained person must be given notice of the time, place, and date of the hearing. I.C. § 12–26–6–3. Consequently, A.L.'s analogy of the Report to a charging instrument is inapt.

In addition, A.L. was represented by counsel at the final hearing. A.L.'s Counsel cross-examined Wishard's witnesses and presented evidence on behalf of A.L. in the form of A.L.'s testimony. A.L. does not state how her preparation for the final hearing would have differed had she known in advance that Wishard intended to argue dangerousness in addition to grave disability.

Finally, as we discuss in more detail below, even if one sets aside the question of whether A.L. was dangerous, the evidence is sufficient to sustain the trial court's Order because Wishard proved by clear and convincing evidence that A.L. was gravely disabled. *See* Section II *infra*.

**3.** There is a separate procedure for the involuntary commitment of persons for longer than ninety (90) days. *See* Ind.Code § 12–26–7–1 *et seq.*

**4.** A.L. cites to *Zinermon v. Burch*, 494 U.S. 113, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990), but that case is inapplicable here because it is neither a criminal case nor a civil action for involuntary commitment, but is instead a civil lawsuit filed under 42 U.S.C. section 1983.

After considering these factors, we conclude that any error in the trial court's admission of evidence or consideration of Wishard's argument as to A.L.'s dangerousness was not a blatant violation of our concepts of fundamental fairness and did not cause substantial and apparent harm to A.L. Consequently, we conclude that the trial court did not commit fundamental error and decline to disturb its judgment on this ground.

## II.  SUFFICIENCY OF EVIDENCE

■■■ Indiana Code section 12–26–6–1 allows a court to order an individual's temporary commitment, which may last for no more than ninety (90) days, if the petitioner proves by clear and convincing evidence that the individual is mentally ill and either "dangerous" or "gravely disabled." *In re Commitment of R.B.*, 845 N.E.2d 1063, 1065 (Ind.Ct.App.2006). The petitioner must also prove by clear and convincing evidence that detention or commitment of that individual is appropriate. Ind.Code § 12–26–2–5. Civil commitment is a significant deprivation of liberty that requires the petitioner to show "that the individual suffers from something more serious than is demonstrated by idiosyncratic behavior." *Id.* (quoting *Addington*, 441 U.S. at 427, 99 S.Ct. at 1810). When we review an order for commitment, we consider only the evidence favorable to the judgment and all reasonable inferences therefrom. *Id.* We will not reweigh the evidence or judge the witnesses' credibility. *Id.* If the trial court's commitment order represents a conclusion that a reasonable person could have drawn, the order must be affirmed, even if other reasonable conclusions are possible. *Id.*

Here, A.L. does not dispute that she is mentally ill, but she disputes that she is dangerous or gravely disabled. Pursuant to Indiana Code section 12–26–6–1, Wishard was obligated to prove only one of those elements.

We turn to A.L.'s argument that she is not gravely disabled. For purposes of involuntary commitment, "gravely disabled" is defined as:

a condition in which an individual, as a result of mental illness, is in danger of coming to harm because the individual: (1) is unable to provide for that individual's food, clothing, shelter, or other essential human needs; or (2) has a substantial impairment or an obvious deterioration of that individual's judgment, reasoning, or behavior that results in the individual's inability to function independently.

Ind.Code § 12–7–2–96.

■■■ We first consider whether Wishard established that A.L. has a substantial impairment or an obvious deterioration of her judgment, reasoning, or behavior that results in an inability to function independently. When Indiana Code section 12–7–2–96(2) is at issue, the trial court need not find that the person in question is incapable of providing himself or herself with food or clothing, nor does it need to find that the person is dangerous, before it can conclude that the person is gravely disabled. *See Golub v. Giles*, 814 N.E.2d 1034, 1039 (Ind.Ct.App.2004), *trans. denied* (determining that the trial court properly concluded that the appellant had a substantial impairment or an obvious deterioration of the appellant's judgment, reasoning, or behavior that resulted in an inability to function independently).

At the final hearing, Dr. Fekete testified that A.L., who was thirty-five years old, was brought to Wishard from the Indiana Statehouse, where she was asking officials to help her get access to "child papers and wills" in Monticello, Indiana. Tr. p. 11. Upon arriving at Wishard, A.L. displayed "mood lability," which means that she

abruptly shifted between irritable and tearful demeanors. *Id.* Her speech was rapid, and her conversation was disorganized, switching from topic to topic, "often continuous[ly]." *Id.* She displayed bizarre ideations, including a belief that several years ago a doctor had implanted a chip into her right thigh that stole thoughts from her. She also displayed paranoid ideations regarding events dating from her childhood up to the time she was brought to Wishard.

A.L.'s mother, Brenda Crafton, testified that over the past twelve years, A.L. has "changed horrifically." Tr. p. 23. A.L. displays "outrageous anger" directed at people, and she behaves angrily "90 percent of the time." *Id.* Crafton stated that A.L. is unpredictable because she can go from smiling and conversing normally to "physically attacking you" with no warning. Tr. pp. 26–27. Crafton has obtained a restraining order against A.L. because A.L. has physically assaulted her in the past.

Next, Dr. Fekete further testified that during her detention at Wishard, A.L. took all of her medications, but despite taking her medications she still demonstrated mood lability in the form of sudden anger towards staff. She also continued to demonstrate bizarre ideations by demanding that Wishard staff contact the president and Colin Powell about her case and by demanding to be scanned for the chip that she believed had been implanted in her right hip. A.L.'s continuing delusional beliefs caused Dr. Fekete to conclude that A.L. has substantial impaired judgment.

Additionally, there is evidence that A.L. does not acknowledge the severity of her mental illness and will not seek treatment on her own. Dr. Fekete testified that although A.L. had been on medications in the past for mental illness, she stopped taking them about a year prior to her current hospitalization because she believed "the illness was over." Tr. p. 16. Furthermore, although A.L. acknowledged while at Wishard that she has a history of "bipolarism," Dr. Fekete observed that A.L. does not recognize the severity of her symptoms "nor does she even acknowledge any delusional thinking that she has voiced to us at this point." Tr. p. 12. A.L. needs to continue taking her medications, but Dr. Fekete stated that A.L. does not want to do voluntary treatment.

The foregoing evidence establishes that A.L. has a substantial impairment or an obvious deterioration of her judgment, reasoning, or behavior. *See R.B.*, 845 N.E.2d at 1065 (affirming a trial court's determination that a person was gravely disabled because the appellant exhibited "disorganized, aggressive, agitated, and delusional behavior" which resulted from the appellant's failure to take medication).

Next, we consider the evidence of A.L.'s inability to function independently. Crafton testified that A.L. does not have a home of her own, and for the three years prior to her emergency detention A.L. stayed in different residences with different people, moving from place to place after getting into arguments with her hosts. Crafton will not allow A.L. to live with her because she fears for her safety and has obtained a restraining order against A.L. Crafton also testified that A.L. has never been able to obtain gainful employment, and that A.L. does not have custody of any of her four children.

This evidence of A.L.'s inability to maintain stable housing and employment due to her mental illness is sufficient to demonstrate that A.L.'s behavior goes beyond merely idiosyncratic, and that she has a substantial impairment or an obvious deterioration of her judgment, reasoning, or behavior that results her being unable to function independently. *See*

*J.S. v. Center for Behavioral Health*, 846 N.E.2d 1106, 1113 (Ind.Ct.App.2006), *trans. denied* (determining that there was sufficient evidence that the appellant was gravely disabled where, without medication, the appellant would manifest severe serious symptoms of a mental illness that would render her unable to function, and appellant stated that she did not believe that she was mentally ill and did not want to take medication). Consequently, Wishard provided clear and convincing evidence that A.L. is gravely disabled.[5] *See* Ind.Code § 12–7–2–96(2).

A.L. contends that she is not substantially impaired in judgment. She notes that she complied with treatment during her detention at Wishard and took care of her basic needs there despite her bizarre ideations. She further characterizes her conduct at the State House as odd but not evidence of impairment in judgment. This argument is a request to reweigh the evidence, which we may not do.

A.L. also contends that she is able to function independently. She points to her own testimony at the final hearing that she had an apartment available for her use on the day of the final hearing. She also cites her mother's testimony that A.L. always managed to get by despite her mental illness. In addition, A.L. testified that she had applied for Medicaid and food stamps prior to her emergency detention. This argument is also a request to reweigh the evidence.

 We have determined that Wishard demonstrated that A.L. is gravely disabled. Because Indiana Code section 12–26–6–1 is written in the disjunctive, proof that A.L. is gravely disabled is sufficient to support the trial court's judgment that

A.L. should have been temporarily involuntarily committed. Therefore, we do not need to consider whether Wishard proved by clear and convincing evidence that A.L. is dangerous to herself or others.

*CONCLUSION*

For these reasons, we affirm the judgment of the trial court.

Affirmed.

ROBB, J., and CRONE, J., concur.

---

5. Indiana Code § 12–7–2–96 defines "gravely disabled" in the disjunctive, so we need not consider whether Wishard demonstrated by clear and convincing evidence that A.L. is unable to provide for her food, clothing, shelter, or other essential human needs.