## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jul 27 2017, 10:58 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Darren Bedwell
Marion County Public Defender
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Andrew B. Howk
Hall, Render, Killian, Heath &
Lyman
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Civil Commitment of:
R.S.,

*Appellant-Respondent,*

v.

St. Vincent Hospital and Health Care Center, Inc., St. Vincent Stress Center,

*Appellee-Petitioner.*

July 27, 2017

Court of Appeals Case No.
49A05-1701-MH-3

Appeal from the Marion Superior Court

The Honorable Steven R. Eichholtz, Judge

Trial Court Cause No.
49D08-1612-MH-42222

**Pyle, Judge.**

# Statement of the Case

R.S. appeals the trial court's order granting St. Vincent Hospital and Health Center's ("St. Vincent") petition for her involuntary temporary commitment. She argues that there was not sufficient evidence to prove that she was "gravely disabled," as required for an involuntary temporary commitment. Because we conclude that there was sufficient evidence to prove that R.S. was "gravely disabled," we affirm the trial court's decision.

We affirm.

# Issue

Whether there was sufficient evidence to support the trial court's involuntary temporary commitment of R.S.

# Facts

From approximately 2009 to 2016, R.S. lived in North Carolina and received treatment there for an unspecified mental illness. In 2016, R.S.'s family, who lived in Indiana, received phone calls from police departments of "several different cities" in North Carolina within a few days. (Tr. 14). The police officers informed the family that R.S. had been "traveling back and forth" and "[g]oing from shelter to shelter." (Tr. 14). They said that they had paid for R.S. to stay in hotel rooms and had gotten her into shelters so that she would have a safe place to stay, but she had "continue[d] to leave and just roam the streets." (Tr. 14). Based on these calls, R.S.'s family went to North Carolina to retrieve R.S. and bring her to Indianapolis.

[4]     When R.S. arrived at her family's house in Indianapolis, she got out of the car and started "going into convulsions" and "acting [as] if she was having a seizure." (Tr. 15-16, 17). R.S.'s sister called 911, and R.S. was admitted to St. Vincent. During her hospital evaluation "it became eviden[t] that it wasn't a medical problem but . . . a psychiatric problem." (Tr. 13). As a result, on November 28, 2015, St. Vincent filed with the trial court an application for R.S.'s emergency detention. In its application, St. Vincent mentioned that R.S. had a history of strokes, had presented with stroke-like symptoms, and had been exhibiting bizarre behaviors, including refusing to remove her shower cap from her face. Shortly thereafter, St. Vincent filed a report petitioning the court for an order involuntarily committing R.S. The court scheduled a hearing on the issue for December 5, 2016.

[5]     In the meantime, R.S. became paranoid that the staff in the hospital were poisoning her, and she refused to take her psychiatric or general health medications, including medications she needed to treat her hypertension and vascular problems.[1] She also had delusions that she was unable to speak. Dr. Shaun Wood ("Dr. Wood"), a psychiatrist with St. Vincent, diagnosed R.S. as having an "unspecified psychosis" that was "of a thought disorder nature like schizophrenia." (Tr. 7). Dr. Wood was unable to "get much of a history" of

---

[1] At R.S.'s commitment hearing, Dr. Shaun Wood clarified that R.S. had been "intermittently taking some of the general medical meds but refusing psychiatric medicine except for the Viibyrd[,]" which she had been taking "to some degree." (Tr. 8).

R.S.'s psychosis due to R.S.'s "impaired thought process" and "inability" or "refusal" to speak. (Tr. 7).

[6] On December 5, 2016, the trial court held its scheduled hearing on St. Vincent's petition for an involuntary temporary commitment of R.S. At the hearing, Dr. Wood testified that R.S.'s thought disorder had rendered her incapable of complying with treatment. He noted that R.S. had tried to communicate with him through writing due to her unwillingness or inability to speak, but he had not been able to understand what she had been trying to say due to the way her "thought process [] present[ed] itself in written form." (Tr. 9). He opined that, due to R.S.'s apparent inability to effectively communicate and "think logically enough," she did not have the ability to provide herself with food, clothing, shelter, or other essential human needs, or to communicate her needs to others. (Tr. 9). As a result, Dr. Wood testified that he considered R.S. gravely disabled and that he believed she needed in-patient treatment at St. Vincent. When asked what concerns he would have if the trial court were to deny the petition for temporary commitment, Dr. Wood testified that he would be concerned that R.S. would "end up coming to harm" by failing to take her "general medical med[icines]." (Tr. 11). He also opined that R.S. did not have the ability to exhibit the proper judgment, reasoning, or behavior necessary to function independently.

[7] Next, R.S.'s sister, S.S., testified that she did not believe that her sister was capable of making appropriate decisions and that she believed temporary commitment was in R.S.'s best interests. She explained that R.S. had started

"bouncing around from facility to facility" while she was in North Carolina because there had "always [been] an issue with the place or someone there or someone in her past." (Tr. 16). Specifically, S.S. testified that R.S. had believed that people from her past were following her, and she had continued to make statements to that effect after she was brought to Indianapolis.

[8] At the conclusion of the hearing, the trial court granted St. Vincent's petition for R.S.'s involuntary temporary commitment, finding that R.S. was gravely disabled and that placement with St. Vincent was the least restrictive environment suitable for her treatment and stabilization. The trial court ordered the commitment to last until March 5, 2017. R.S. now appeals.

# Decision

[9] On appeal, R.S. argues that there was insufficient evidence to support her temporary commitment.[2] In reviewing the sufficiency of the evidence to support a civil commitment, which requires clear and convincing evidence, "'an appellate court will affirm if, considering only the probative evidence and the reasonable inferences supporting it, without weighing evidence or assessing witness credibility, a reasonable trier of fact could find the [necessary elements] proven by clear and convincing evidence.'" *Commitment of M.E. v. Dep't of*

---

[2] Notably, R.S.'s temporary commitment has already expired, which renders her argument moot. We generally do not discuss moot issues, but we have found that "the question of how persons subject to involuntary commitment are [treated] by our trial courts is one of great importance to society" that we will address on the merits even if it is moot. *Commitment of M.E. v. Dep't of Veteran's Affairs*, 64 N.E.3d 855, 859 n.3 (Ind. Ct. App. 2016) (quoting *Golub v. Giles*, 814 N.E.2d 1034, 1036 n.1 (Ind. Ct. App. 2004), *trans. denied*).

*Veteran's Affairs*, 64 N.E.3d 855, 861 (Ind. Ct. App. 2016) (quoting *Civil Commitment of T.K. v. Dep't of Veteran's Affairs*, 27 N.E.3d 271, 273 (Ind. 2015) (internal quotation omitted)).

[10] INDIANA CODE § 12-26-2-5(e) provides that the petitioner in a case involving the involuntary treatment of mentally ill individuals must prove by clear and convincing evidence that: (1) the individual is mentally ill and either dangerous or gravely disabled; and (2) detention or commitment of that individual is appropriate. Clear and convincing evidence requires proof that the existence of a fact is "highly probable." *M.E.*, 64 N.E.3d at 861. "'There is no constitutional basis for confining a mentally ill person who is not dangerous and can live safely in freedom.'" *Id.* (quoting *Commitment of J.B. v. Midtown Mental Health Ctr.*, 581 N.E.2d 448, 451 (Ind. Ct. App. 1991), *trans. denied*).

[11] R.S. does not dispute the trial court's finding that she is mentally ill. However, she argues that there was insufficient evidence to support the trial court's finding that she is gravely disabled. INDIANA CODE § 12-7-2-96 defines "gravely disabled" as:

> A condition in which an individual, as a result of mental illness, is in danger of coming to harm because the individual:
>
>> (1) is unable to provide for that individual's food, clothing, shelter, or other essential human needs; or
>>
>> (2) has a substantial impairment or an obvious deterioration of that individual's judgment, reasoning, or behavior that results in the individual's inability to function independently.

Because this statute is written in the disjunctive, a trial court's finding of grave disability survives if we find that there was sufficient evidence to prove either that the individual was unable to provide for his basic needs or that his judgment, reasoning, or behavior was so impaired or deteriorated that it resulted in his inability to function independently. *Commitment of B.J. v. Eskenazi Hosp./Midtown CMHC*, 67 N.E.3d 1034, 1039 (Ind. Ct. App. 2016). Our supreme court has previously held that a denial of mental illness and refusal to medicate, standing alone, are insufficient to establish grave disability because they do not establish by clear and convincing evidence that the individual is unable to function independently. *See T.K.*, 27 N.E.3d at 276. The United States Supreme Court has also held that, since everyone exhibits some abnormal conduct at one time or another, "loss of liberty [through a commitment] calls for a showing that the individual suffers from something more serious than is demonstrated by idiosyncratic behavior." *Addington v. Texas*, 441 U.S. 418, 426-27, 99 S.Ct. 1804, 1810 (1979).

[12]     R.S. argues that there was insufficient evidence that she was gravely disabled because the only evidence supporting that finding was the evidence that she refused to take medication, which was insufficient according to *T.K.* She claims that her refusal to speak was not evidence of a grave disability because it was merely idiosyncratic behavior. However, R.S. overlooks the other elements of the definition of "gravely disabled." In addition to her refusal to take her medication or speak, R.S. demonstrated that she was unable to provide for her essential human needs, including shelter. Her sister testified that her

family had received phone calls from police officers in North Carolina who said that, even when they had provided shelter for R.S. in order to keep her safe, she had left the shelter "to roam the streets." (Tr. 14). R.S.'s sister also clarified that R.S.'s inability to maintain shelter resulted from her delusional beliefs that people from her past were following her, which continued after she was brought to Indianapolis.

[13] In addition, while R.S.'s refusal to speak might be considered idiosyncratic, it impacted her ability to meet her needs. Dr. Wood testified that he was unable to understand R.S.'s communications, even through writing, due to the way her "thought process [] present[ed] itself in written form." (Tr. 9). He opined that, as a result of her ineffective communication, she would not be able to communicate her needs to others sufficiently to meet her needs if she were not committed.

[14] In light of this evidence, we conclude that there was sufficient evidence that R.S. was unable to maintain shelter or provide for her other essential human needs and was, thus, gravely disabled. *See A.L. v. Wishard Health Servs., Midtown Cmty. Mental Health Ctr.*, 934 N.E.2d 755 (Ind. Ct. App. 2010) (finding that A.L.'s inability to maintain stable housing, inability to maintain employment, and delusions causing a substantial impairment in judgment were sufficient evidence to establish her grave disability). Accordingly, there was sufficient evidence to support R.S.'s temporary commitment.

Affirmed.

May, J., and Brown, J., concur.