

# IN THE
# Court of Appeals of Indiana

In re Commitment of P.P.,

P.P.,

*Appellant-Respondent*

v.

Community Fairbanks Behavioral Health,

*Appellee-Petitioner*



FILED

Feb 06 2026, 9:35 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

February 6, 2026

Court of Appeals Case No.
25A-MH-1592

Appeal from the Marion Superior Court

The Honorable Sarah Glasser, Magistrate

Trial Court Cause No.
49D08-2505-MH-025195

**Opinion by Judge Felix**

Judges Brown and Scheele concur.

**Felix, Judge.**

## Statement of the Case

Community Fairbanks Behavioral Health ("Hospital") petitioned to have P.P. involuntarily temporarily committed. However, in the middle of the hearing, the Hospital argued that an involuntary regular commitment was more appropriate. The trial court ordered an involuntary regular commitment. P.P. now appeals, raising several issues for our review, one of which is dispositive and restated as follows: Whether the trial court erred in ordering P.P.'s regular commitment.

We reverse and remand with instructions.

## Facts and Procedural History

In May 2025, P.P. ran a red light while driving because "she was having auditory hallucinations." Tr. Vol. II at 11. After wrecking her vehicle, P.P. was detained on an emergency basis on Hospital's application. On May 29, Hospital petitioned for an involuntary temporary commitment of P.P., alleging that she was gravely disabled as a result of her mental health diagnoses. According to the Chronological Case Summary (the "CCS"), the trial court scheduled a hearing on Hospital's "Petition for Temporary Mental Health Commitment" to be held on June 6. Appellant's App. Vol. II at 4.

[4] Dr. Victoria Nobari testified on behalf of Hospital, and she opined that P.P. was both dangerous, and incapable of functioning independently, due to her suffering from "schizoaffective disorder[,] bipolar type," Tr. Vol. II at 15. At the end of Dr. Nobari's testimony during Hospital's case-in-chief, she requested a regular commitment for P.P. based in part on past "decompensat[ion]" following prior temporary commitments and the fact that P.P. had a "chronic illness" where a "temporary amount of treatment [would not] make the symptoms go away." *Id.* at 21. Hospital was aware of P.P.'s diagnosis and past commitments when it filed its petition for an involuntary temporary commitment. Hospital did not make a formal motion to amend its petition, and the CCS reflects that the June 6 hearing was a temporary commitment hearing. At the conclusion of the June 6 hearing, the trial court found that P.P. was dangerous to others and gravely disabled, and it issued an order of regular commitment. This appeal ensued.

## Discussion and Decision

### The Trial Court Erred by Ordering P.P.'s Involuntary Regular Commitment

[5] P.P. argues that her regular commitment violates due process because Hospital originally petitioned for a temporary commitment and only pivoted to

requesting a regular commitment in the middle of the commitment hearing.[1,2]
We review constitutional questions de novo. *Morales v. Rust*, 228 N.E.3d 1025,
1033 (Ind. 2024) (citing *City of Hammond v. Herman & Kittle Props., Inc.*, 119
N.E.3d 70, 78 (Ind. 2019)), *reh'g denied* (Apr. 22, 2024), *cert. denied*, 145 S. Ct.
177 (2024). "[T]he purpose of civil commitment proceedings is dual: to protect
the public and to ensure the rights of the person whose liberty is at stake." *T.K.
v. Dep't Veterans Affs.*, 27 N.E.3d 271, 273 (Ind. 2015) (quoting *In re Commitment
of Roberts*, 723 N.E.2d 474, 476 (Ind. Ct. App. 2000)). Given the significant
liberty interests and collateral consequences at stake in civil commitment
proceedings, the respondents thereto are afforded due process protections. *Id.*
(citing *Addington v. Texas*, 441 U.S. 418, 425–26 (1979)). "A judgment rendered
in violation of the Due Process Clause is void." *G.W. v. Madison State Hosp.*,

---

[1]P.P. does not challenge the trial court's findings that she was mentally ill, gravely disabled, and dangerous to others. Instead, P.P. argues that a regular—as opposed to temporary—commitment was improper based in part on Hospital's failure to "provide proper notice for a regular commitment." Appellant's Br. at 13.

[2]As Hospital argues, P.P. did not specifically raise procedural due process at the trial level, so she did not provide the trial court "a bona fide opportunity to pass upon the merits" of this particular issue before seeking an opinion on appeal. *Endres v. Ind. State Police*, 809 N.E.2d 320, 322 (Ind. 2004). Accordingly, P.P. has waived this issue for our review by raising it for the first time on appeal. *See Expert Pool Builders, LLC v. Vangundy*, 224 N.E.3d 309, 313 (Ind. 2024) (citing *Plank v. Cmty. Hosps. of Ind., Inc.*, 981 N.E.2d 49, 53 (Ind. 2013)) ("Generally, we limit appellate review to arguments the parties first presented to the trial court."). We nevertheless choose to address the merits of P.P.'s due process claim, *see Plank*, 981 N.E.2d at 54 (citing *Morse v. State*, 593 N.E.2d 194, 197 (Ind. 1992)) ("[A] reviewing court may exercise its discretion to review a constitutional claim on its own accord."), particularly because P.P.'s personal liberty rights are at stake here, *see T.K. v. Dep't of Veterans Affs.*, 27 N.E.3d 271, 273 (Ind. 2015)) ("The liberty interest at stake in a civil commitment proceeding goes beyond a loss of one's physical freedom, and given the serious stigma and adverse social consequences that accompany such physical confinement, a proceeding for an involuntary civil commitment is subject to due process requirements").

245 N.E.3d 153, 159 (Ind. Ct. App. 2024) (citing *B.A. v. State*, 219 N.E.3d 134, 138–39 (Ind. Ct. App. 2023)).

[6] Indiana allows for both regular (indefinite but more than 90 days) and temporary (90 days or less) involuntary commitments. *See* Ind. Code §§ 12-26-7-1 to -5 (reg.), 12-26-6-1 to -11 (temp.). "A regular commitment is the most restrictive form of involuntary treatment." *In re of Commitment of R.L.*, 666 N.E.2d 929, 930 n.3 (Ind. Ct. App. 1996). "The express language of I[ndiana] C[ode section] 12-26-7-4 authorizes two separate paths from which the trial court can properly enter an order of regular commitment." *R.L.*, 666 N.E.2d at 932. The first path originates with a temporary commitment. *Id.* When a temporary commitment is sought, a "hearing must be set within three days from the filing of the petition for temporary commitment and, after the hearing, the trial court may order the individual to be committed" for a period not exceeding 90 days. *Id.* at 931 (citing I.C. §§ 12-26-6-4, -8(a)). An individual's temporary commitment may be extended for one additional temporary commitment. I.C. § 12-26-6-10. However, *before the end* of either the first or second (consecutive) temporary commitment, "the superintendent of the facility or the attending physician shall make a report to the court that states" (1) the individual's mental condition, (2) "[w]hether the individual is dangerous or gravely disabled," and (3) whether the individual should be regularly committed. *Id.* § 12-26-6-11.

[7] The second and more direct path is set forth in Indiana Code section 12-26-7-2: "A proceeding for the commitment of an individual who appears to be suffering

from a chronic mental illness may be begun by filing with a court having jurisdiction a written petition by" a person recognized under this section. I.C. § 12-26-7-2(b). The petition "must include a physician's written statement" that, in relevant part, states that the individual is "in need of custody, care, or treatment in a facility for a period expected to be more than ninety (90) days." *Id.* § 12-26-7-3.

[8] By comparison, a petition for a temporary commitment need not propose the expected treatment time; instead, the required physician's statement appended thereto need only state that the individual for whom commitment is sought is mentally ill and either gravely disabled or dangerous. I.C. § 12-26-6-2. The notice for the resulting temporary commitment hearing must state the "time, place, and date of the hearing." *Id.* § 12-26-6-3. There is no separate hearing notice requirement under the regular commitment chapter. *See Id.* § 12-26-7-1 to -5. However, Indiana Code section 12-26-2-2 applies to both temporary and regular commitment proceedings and states that the "individual alleged to have a mental illness" has the right to (1) "receive adequate notice of a hearing" to allow for hearing preparation, (2) receive a copy of the petition, (3) be present at the hearing unless removed by the court, and (4) "be represented by counsel." *Id.* § 12-26-2-2(b). Notice is adequate under the Due Process Clause if it "set[s] forth the time, place and purpose of the hearing." *GPH v. Giles*, 578 N.E.2d 729, 736 (Ind. Ct. App. 1991) (citing *In re Binkley*, 178 Ind. App. 301, 304, 382 N.E.2d 952, 954 (1978)) (concluding notice was adequate because although

portions of the physician's statement were illegible, committed person was notified of the temporary commitment proceeding).

[9] As an initial matter, we note that while the single-page document labeled "Petition for Commitment Hearing" was silent as to the nature of the commitment sought, Appellant's App. Vol. II at 11, the physician's statement that was required to be included with the petition explicitly requested a "[t]emporary" commitment, *id*. at 14. The CCS shows that Hospital's petition was for a temporary commitment and that the June 6 hearing concerned the temporary commitment petition. *See Baker v. State*, 255 N.E.3d 1199, 1205 (Ind. Ct. App. 2025) (citing *Berry v. State*, 23 N.E.3d 854, 857 (Ind. Ct. App. 2015)) ("The CCS is the official record of a trial court's actions."). The physician's statement included with Hospital's petition did not state that P.P. was "in need of custody, care, or treatment . . . expected to be more than ninety (90) days," as is required for a regular commitment petition by Indiana Code section 12-26-7-3(a)(2)(B). Dr. Nobari acknowledged that when filing the petition, Hospital initially believed a temporary commitment would suffice, which indicates there was no scrivener's error. Moreover, P.P. was not already under a temporary commitment order. *See id.* § 12-26-7-4(a)(2), (b).

[10] P.P. argues that the "eleventh-hour shift" to a regular commitment hearing "deprived [her] of meaningful notice and the ability to prepare a defense tailored to a regular commitment." Appellant's Reply Br. at 7. We agree.

[11] Hospital cites to *A.L. v. Wishard Health Services, Midtown Community Mental Health Center*, 934 N.E.2d 755 (Ind. Ct. App. 2010), for the proposition that "import[ing] criminal-charging-instrument standards into civil-mental-health-commitment proceedings is misplaced." Appellee's Br. at 26. In *A.L.*, Wishard sought a temporary commitment of A.L. *A.L.*, 934 N.E.2d at 758. During the hearing, the physician testified regarding dangerousness even though Wishard did not indicate that A.L. was dangerous in its petition. *Id.* at 759. There, the petition and hearing were for a temporary commitment, so while the evidence presented during the hearing went beyond the allegation on the petition, the purpose of the proceeding—an involuntary temporary commitment—was unchanged. Here, by contrast, Hospital's mid-hearing pivot changed the *purpose* of the commitment sought from temporary to regular, and Hospital did so without any notice to P.P. before the hearing started. Proceeding in such a manner failed to give P.P. any prior notice that Hospital was now seeking a regular commitment in accordance with Dr. Nobari's testimony.

[12] Hospital's remaining arguments on this issue are likewise unpersuasive. First, Hospital claims the petition merely "alerts the trial court that a physician has examined the individual and believes the person is mentally ill, dangerous or gravely disabled, and needs treatment in an appropriate facility." Appellee's Br. at 27. This is true regarding temporary commitment petitions; however, a regular commitment petition requires more, namely, that the attached physician's statement state that treatment is expected to last longer than 90 days. I.C. § 12-26-7-3. This additional requirement suggests the General

Assembly recognizes that an indefinite—and potentially permanent—commitment "require[s] safeguards commensurate with a long-term commitment," *McNeil v. Dir., Patuxent Inst.*, 407 U.S. 245, 249 (1972). In other words, a regular commitment has heightened notice requirements (i.e. letting the patient know the potential amount of time that the court can commit him or her).

[13] Second, Hospital's claim that "[t]he patient must receive notice of the time, date, and place of the hearing—nothing more," Appellee's Br. at 27, contradicts the plain language of Indiana Code section 12-26-2-2, which requires that notice be "adequate" in such a way that allows the "individual alleged to have a mental illness" to prepare for a hearing. It is difficult to imagine how this might occur if notices were limited in the way that Hospital suggests. The Hospital's proposed notice would not only fail to inform a person that the hearing he must attend is for a mental health proceeding but it would also fail to inform the person of the hearing's potential consequences—a temporary versus an indefinite loss of liberty. *See id.*; *see also* I.C. §§ 12-26-6-1 to -11, 12-26-7-1 to -5.

[14] Finally, Hospital's contention that a mid-hearing switch to a regular commitment was "medically necessary" to "allow P.P. to receive appropriate treatment in a structured setting, rather than cycling though temporary commitments" fails. Appellee's Br. at 24. Indiana law provides a specific statutory mechanism for transitioning from a temporary commitment to a regular commitment, which is aimed at preventing the very problem Hospital identifies. *See R.L.*, 666 N.E.2d at 931; *see also* I.C. § 12-26-6-11.

We therefore conclude that P.P. was deprived of adequate notice regarding the nature of the proceeding when Hospital argued mid-hearing that a regular commitment was more appropriate than the petitioned-for temporary commitment. Thus, the trial court erred by ordering P.P. regularly committed, and its judgment is void. *See G.W.*, 245 N.E.3d at 159.

Although not raised by the parties, we note that, in addition to the Due Process violation detailed above, the trial court lacked authority to order a regular commitment in this case. *See Burcham v. Metropolitan Bd. of Zoning Appeals Div. I of Marion County*, 883 N.E.2d 204, 211 (Ind. Ct. App. 2008) (quoting *McGraw v. Marion Cnty. Plan Comm'n*, 131 Ind. App. 686, 695, 174 N.E.2d 757, 761 (1961)) ("The power to entertain this particular proceeding depended upon compliance with the statutory conditions precedent to the exercise of that power."). As previously discussed, there are two statutorily permissible paths from which a trial court may order a person regularly committed. *See supra* ¶¶ 6–7. The most direct path requires a petition to be accompanied by a written physician's statement specifying that the individual needs care for more than 90 days. I.C. § 12-26-7-3(a). The second and only other statutorily authorized path to a regular commitment order is upon receiving a "report under I[ndiana] C[ode] section] 12-26-6-11 that recommends treatment" for more than 90 days. *Id*. § 12-26-7-4(a)(2). Indiana Code section 12-26-6-11 requires a treatment facility to make a report to the trial court before the end of a temporary commitment period indicating whether the temporarily committed individual needs to be regularly committed. These are the only paths from which a trial court may

order a regular commitment of an individual whose commitment was sought pursuant to a petition for a temporary commitment. Here, the Hospital chose neither of these paths. As discussed above, Hospital petitioned for a temporary commitment. *See supra* ¶ 9. Based upon that statutory framework explained above, the court only had the authority to grant a temporary commitment. For the foregoing reasons, we remand this case to the trial court for proceedings not inconsistent with this opinion.

Reversed and remanded.

Brown, J., and Scheele, J., concur.

ATTORNEYS FOR APPELLANT

Joel M. Schumm
Brian Leon, Certified Legal Intern
Appellate Clinic
Indiana University
Robert H. McKinney School of Law
Indianapolis, Indiana


ATTORNEYS FOR APPELLEE

Jenny R. Buchheit
Abby V. DeMare
Rani B. Amani
Ice Miller LLP
Indianapolis, Indiana